LOUIS GUTHRIE, ADMINISTRATOR, v. MISSOURI PACIFIC RAILWAY COMPANY.

FILED JUNE 3, 1897. No. 7283.

1. Negligence: PERSONAL INJURIES: QUESTION FOR JURY: DIRECTING VERDICT. On a question of negligence where there is a conflict in the evidence or the facts are left in dispute, or fair minds might draw different inferences or conclusions from the facts proved, it should be submitted to the jury; but where the facts are undisputed or there is no conflict in the evidence, and but one reasonable inference can be drawn from the facts, the question is one for the court.

2. ———: ———: CONTRIBUTORY NEGLIGENCE. Where it is clearly established that there has been contributory negligence on the part of an injured party which was the proximate cause of the injury, there can be no recovery therefor.

ERROR from the district court of Sarpy county. Tried below before KEYSOR, J. *Affirmed.*

*E. M. Bartlett* and *James Hassett,* for plaintiff in error.

*B. P. Waggener, James W. Orr, A. R. Talbot,* and *Chris Hoeppner, contra.*

HARRISON, J.

This action was instituted by Lewis G. Guthrie, as administrator of the estate of George S. Guthrie, deceased, against the defendant company to recover damages for the alleged negligent killing of George S. Guthrie by the company at a street or highway crossing in South Omaha known as "Morrill's Crossing," on the 25th of November, 1892, when he was crossing the tracks with a team of horses and wagon and was struck by one of the company's engines and train of cars and was killed. Issues were joined and tried. At the close of the introduction of the testimony, at the instance of the company, the trial judge instructed the jury as follows: "The jury are instructed that the plaintiff has failed to make out or prove any cause of action in his favor against the defendant, and that the uncontradicted evidence conclusively discloses on the part of plaintiff's intestate contributory negligence contributing to the injury complained of. You will therefore return a verdict for defendant." A verdict was returned in accordance therewith. After the plaintiff's motion for a new trial was presented and overruled, judgment was rendered on the verdict. The plaintiff asks of this court the reversal of the judgment.

The arguments advanced in furtherance of the purpose of the error proceedings are all on subordinate questions or points of the main burden of complaint,—the action of the trial judge in instructing the jury to return a verdict favorable to the company. It is said that the evidence was conflicting, that the question to be determined was in regard to negligence, was one of fact for examination

and settlement by the jury, and not one of law for the court. To determine the force of this necessitates a review of the important and material incidents and occur- rences at "Morrill's Crossing" on November 25, 1892, as disclosed by the evidence. There was testimony that tended to establish that the train of the company, by which George Guthrie was struck was at the time run- ning at a rate of speed in excess of that allowed by the ordinance of the city of South Omaha, wherein the cross- ing was located. Let it be conceded that in this particu- lar the company was negligent; we then have for consid- eration and determination the further query of whether there was contributory negligence on the part of plaint- iff's intestate which bars this action. There was con- siderable testimony introduced on the subject of whether there were any cars standing on the switches at or near this crossing on the day and when the plaintiff's intestate was killed, which would obstruct the view of the tracks from the crossing in the direction from which the engine and train by which he was struck approached, also in relation to permanent objects which might have had a similar effect. The evidence in regard to there being any cars on the switches at the time was conflicting, but in contemplation of the vital facts as established by the testimony those become immaterial or without force in the adjudication of the main question presented. It was disclosed by the testimony that at "Morrill's Crossing" there were five tracks, three of which were sidetracks or "switches" and two main lines or tracks; of these the main line tracks were in the center, parallel and adjacent; to the east of them was situate one of the sidetracks, and on the west were two. The train by which Guthrie was struck was coming from the north, on the easterly of the two main line tracks. Guthrie was driving a team of horses attached to a farm wagon, was sitting on the spring seat, and coming in a northeasterly direction to the crossing, with the intention of going over the tracks, to do which he changed his direction from toward the

northeast to almost or quite due east. At this time J. H. Brush was driving a team hitched to a wagon south toward the crossing, and along between the track on which the train was approaching and the one sidetrack on the east, intending to turn when he reached the crossing and drive over the two main line tracks and the two sidetracks to the west side. He had reached the crossing and turned his team to the west, so that they were starting to the west and over the track on which the train was coming from the north. It was a cold day. He had on a buffalo skin overcoat, with the collar turned up over his ears, and evidently did not hear the train coming behind him. He had noticed Guthrie coming across toward him from the west, and when Brush was just starting over the easterly main line track, Guthrie, who was then on the second sidetrack, counting from the west, and with the one main line track between where he was and the track on which was the train, stopped his horses, stood up in his wagon, and motioning to Brush with one hand told him the train was coming, at which Brush turned his horses' heads to the eastward and backed them so that they, the wagon, and he were out of the way of the train. Guthrie, immediately after warning Brush of the approach of the train, started his team and struck, or struck at, one or both of the horses with the ends of the lines or driving reins, and attempted to go over the tracks before the coming train would reach the crossing, but did not succeed. The engine struck the wagon and one of the results was the killing of Mr. Guthrie. In its approach to this crossing the train came around a curve about two thousand feet distant therefrom, and the engineer on the engine saw both Brush and Guthrie very soon after leaving the curve, and, from what he noticed of their actions, concluded that Guthrie was aware of the coming train, and that Brush was not. When he saw the last named person turn his team toward the track as if to cross it, the engineer states that he applied the air to the brakes with full force, as it is done when, as he expressed it, an

"emergency stop" is desired.   Just before this, and when about nine hundred feet distant from the crossing, he had given warning by blowing the whistle.   When Guthrie had succeeded in calling Brush's attention to the train, and Brush had withdrawn his horses from the track and beyond danger of being struck, and these facts became apparent to the engineer, he released the brakes, turned on the steam, and commenced to increase the speed of the train.   As Guthrie had prior to this time stopped, and been instrumental in warning Brush, to the knowl-edge of the engineer, the last mentioned person had at this immediate time been watching Brush and his actions, but on again directing his notice to Guthrie he discovered him in the act of urging his team over the tracks in front of the engine, then about 200 feet away.   The engineer states that he did all that could be done to stop the train, but could not before it reached the crossing, struck the wagon, and passed beyond.   It is clear from the material facts in the testimony, and as to which there was no con-flict, that the plaintiff's intestate saw the approaching train and was in a place where he could not have been harmed by it; that for some reason, which the evidence does not show and which we cannot know, Guthrie con-cluded, after having stopped and warned Brush, and seen that he had taken heed of the notice and pulled back from the track, to risk the attempt to cross in front of the train, and in consequence lost his life.   There was in this act such a want of ordinary care as constituted negligence on his part which precluded a recovery in this action. We do not lose sight of the rule that where there is a con-flict in the evidence, or where the facts are left in dispute by the testimony, or where fair minds might draw differ-ent inferences or conclusions from the facts, the case should be submitted to the jury; but it is also true that where the facts are undisputed, there is no conflict in the evidence, or but one reasonable inference or conclusion can be drawn from them, a question of law is presented for the determination of the court, and where, under an

application of the rule just stated, it is clearly established that there has been contributory negligence on the part of an injured party which was the proximate cause of the injury, there can be no recovery. (*Knapp v. Jones,* 50 Neb., 490; *Underhill v. Chicago & G. T. R. Co.,* 45 N. W. Rep. [Mich.], 508; *Guta v. Lake Shore & M. S. R. Co.,* 45 N. W. Rep. [Mich.], 821; *Marks v. Petersburg R. Co.,* 13 S. E. Rep. [Va.], 299; *State v. Baltimore & O. R. Co.,* 21 Atl. Rep. [Md.], 62; *Allen v. Maine C. R. Co.,* 19 Atl. Rep. [Me.], 105; *Chicago, R. I. & P. R. Co. v. Houston,* 95 U. S., 697; *Mynning v. Detroit, L. & N. R. Co.,* 35 N. W. Rep. [Mich.], 811; *Boyd v. Wabash W. R. Co.,* 16 S. W. Rep. [Mo.], 909; *State v. Maine C. R. R. Co.,* 1 New Eng. Rep. [Me.], 287; 1 Thompson, Negligence, 406.) There was no error in the action of the trial court in instructing the jury as it did, and the judgment must be

AFFIRMED.