GIOVANNA BUTERA, APPELLEE, v. J. C. MARDIS COMPANY ET AL., APPELLANTS.

FILED MAY 13, 1916.   No. 18557.

1. **Statutes: Constitutionality: Act for Protection of Laborers.** The act of 1911 (Laws 1911, ch. 65), "providing for the protection and safety of persons in and about the construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures," is not void as in violation of the constitution.

2. Master and Servant: ACT FOR PROTECTION OF LABORERS: VIOLATION: PERSONS LIABLE. The intention of the legislature was to make all those liable for damages caused by a violation of the statute through whom the negligent party derived the right to perform the service; that is, all those who made his employment possible. This would include the owner of the real estate who originated and authorized the improvement.

3. ———: ———: ———: GROSS NEGLIGENCE. A palpable violation of the statute by the employer is gross negligence.

4. ———: ———: ———: CONTRIBUTORY NEGLIGENCE. The defense of contributory negligence still exists in actions for damages caused by a violation of the statute, but employees are not required to anticipate that their employers will fail to perform the duty imposed upon them by the statute.

5. ———: ACTION FOR DEATH: FINDINGS: SUFFICIENCY OF EVIDENCE. The evidence justifies the finding of the jury that the defendant violated the statute, and that the deceased was not guilty of contributory negligence.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Brogan & Raymond* and *John W. Parish,* for appellants.

*Gurley, Woodrough & Fitch,* contra.

*William R. Patrick* and *C. J. Southard, amici curiæ.*

SEDGWICK, J.·

The defendant, the J. C. Mardis Company, contracted to erect a building called the "Flat Iron Building" on a lot of the defendant, Sterling Realty Company, in Omaha. The deceased was in the employ of the Mardis Company and was killed by the fall of a load of material suspended by means of a derrick or crane over the walk. His widow, Giovanna Butera, brought this action for damages, and recovered judgment in the district court for Douglas county against the J. C. Mardis Company and the Sterling Realty Company, jointly. The defendants have appealed separately.

The Sterling Realty Company contends that the statute, so far as it makes the owner of the lot on which the build-

ing was being erected liable, is unconstitutional. Sections 3602, 3612, Rev. St. 1913, provide as follows:

Section 3602. "All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances, erected or constructed by any person, firm or corporation in this state, for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under, or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

Section 3612. "For any injury to person or property, occasioned by any violation of this article, or failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such violation or failure, as aforesaid, a right of action shall accrue to the widow of the person so killed for the benefit of herself and the children or adopted children of the person so killed. * * * In case the person or persons so killed shall leave a widow surviving, the action shall be brought in her name for the benefit of herself and children, if any surviving. * * * The fact that any employee, servant or other person shall continue to work during the time such owner, contractor or subcontractor has failed to comply with the provisions of this article shall not be considered as an assumption of the risk of such employment by such employee, servant or other person and shall not in any case bar recovery of damages for the failure of such owner, contractor or subcontractor to comply with the provisions of this article. In all actions brought to recover damages for injuries caused by a failure to comply with the terms and provisions of this article the owner, contract-

or or subcontractor, if any, shall in all cases be jointly and severally liable in damages for all injuries caused through a failure to comply with this article. The owner, contractor and subcontractor, if any, shall in all cases be jointly and severally liable in damages for all injuries caused through a failure to comply with this article. The owner, contractor and subcontractor, if any, shall in all cases be held liable for the failure or neglect of any superintendent, foreman or other agent, employed by them, or either of them, to comply with the provisions of this article: Provided, however, the provisions of the foregoing article shall not apply to any buildings which do not exceed 33 feet in height above the foundation."

It appears to be conceded that the Sterling Realty Company was the owner of the lot and contracted with the Mardis Company to erect the building thereon. It is contended that "there were no contractual relations between the Sterling Realty Company and John Butera. It is not claimed that the Sterling Company committed any act which contributed to the death of said Butera." The court instructed the jury that, if the contractor was liable, "the Sterling Realty Company, as owner, would be jointly and severally liable." This seems to be fully warranted by the language of the statute. "The owner, contractor and subcontractor, if any, shall in all cases be held liable for the failure or neglect of any superintendent, foreman or other agent, employed by them, or either of them, to comply with the provisions of this article." In contending that this provision of the statute is unconstitutional, this defendant relies upon *Camp v. Rogers*, 44 Conn. 291, and *Daugherty v. Thomas*, 174 Mich. 371.

The nature of the action is thus stated in *Camp v. Rogers, supra*. "The statute (Gen. Statutes, p. 234, sec. 21) provides that the driver of any vehicle, meeting another on the public highway, who shall neglect to turn to the right, and thereby drive against the vehicle so met and injure its owner, or any person in it, or the property of any person, shall pay to the party injured treble damages; and

that 'the owner of the vehicle so driven shall, if the driver is unable to do so, pay such damages, to be recovered by writ of *scire facias.*'" The court said: "If the construction for which the plaintiff contends should be given to the statute upon which her right to recover must depend, then there can be no case in which the owner of a vehicle would not be liable, not only for the actual damage caused by a violation of the statute on the part of any person driving it, but for the threefold and punitive damages given by the statute against the driver. If the owner of a vehicle should leave it, with his horse attached to it, at a post by the side of the street, and in his absence a thief or trespasser should take it, and by reckless driving damage a horse or carriage that he happened to meet, the owner would be liable. So if one lends his vehicle to a friend, and he again lends it to a stranger, the owner would be liable, not only for any damage done by the stranger in driving it, but even by the servant of the stranger. Indeed, we should have this strange anomaly—that my neighbor borrows my carriage and is riding in it with his servant and the latter wilfully neglects to turn to the right and injures a team that he meets, while my neighbor would not be liable as master, because the act of his servant was wilful, I should yet be liable as owner, and too with no right to indemnity from the master." The court "held that, by the word 'owner' in the last clause, the person in control of the vehicle, either mediately or immediately, was intended, and not necessarily the actual owner. Any other construction would make the owner of a vehicle liable for the acts of a person in possession of it, over whom he had no control and to whom he did not stand in the relation of master or principal." We have no criticism on this conclusion of that court. This reasoning will not so readily apply to our statute. When the owner of real estate makes a contract for building thereon, he can in that contract protect himself against any misconduct or neglect of the contractor and can require such guaranty as he deems necessary for his protection. If this statute affects the right of free contract, or if

the public benefit that comes from protecting laboring men against the dangers of their employment will not justify such legislation, such questions of public policy, if doubtful in their application, are for the legislature, and not for the courts. We conclude that this legislation does not violate our fundamental law.

It is suggested in the briefs that the word owner should be construed to apply to the contractor himself while he is in the exclusive possession and control of the building in process of construction, and not to the owner of the real estate until the completed building is delivered to him pursuant to the contract. The statute makes both the owner and contractor liable for the neglect of the subcontractor and "for the failure or neglect of any superintendent, foreman or other agent, employed by them, or either of them." It could not be intended that a subcontractor, for instance a plumber, who would contract to furnish the plumbing of the bu'lding should be considered the owner. The intention plainly was to make all those liable through whom the negligent party derived the right to perform the service; that is, all those who made his employment possible. This would include the owner of the real estate who originated and authorized the improvement.

The plaintiff could not maintain the action in her own name under sections 1428, 1429, Rev. St. 1913, which provide that such action must be brought in the name of the administrator. The defendants insist that the petition fails to state a cause of action under the act of 1911, Rev. St., secs. 3602, 3612. The petition alleges the negligence of the defendants as follows: "Plaintiff alleges that, while the said John Butera was so engaged in walking across said sidewalk and into the street adjacent, the said crane and mechanical contrivance was not so operated by said J. C. Mardis Company as to give proper and adequate protection to the life and limb of persons passing under or by the same, including said John Butera, but, on the contrary, was so operated and in such a manner as to cause the load and material and hook attached to the said crane to fall

and strike and swing upon and against the head and body
of said John Butera with such force and violence that he
was crushed to the ground and killed; that the particular
respects in which the said crane was so operated as not to
give proper and adequate protection to the life and limb
of persons passing under or by the same, including the said
John Butera, and to prevent the material and load at-
tached to the said crane from falling upon such persons,
are more fully set out as follows, to wit: Plaintiff alleges
that in the operation of said crane the J. C. Mardis Com-
pany caused a heavy load of material, upwards of two
thousand pounds or more, to be lifted by said crane from
the roof of the building and suspended over the public
street and sidewalk to the north of said building; that the
said street and sidewalk were at the time wholly unguarded
by said defendant, and were open to and in constant use
by workmen engaged in and about said building; that the
said crane and mechanical contrivance was not in a suit-
able or proper condition to handle such a load as was at-
tached thereto, but by reason of frost upon the brakes and
drum and tackle of said derrick, the load was very liable
to slip and fall or drop upon the said public sidewalk and
street; that the employees of the defendant, the J. C. Mar-
dis Company, who were employed to operate said crane,
to wit, one Robert B. Wartnaby and Harry Reuben, were
not competent or skilled in the operation thereof; that
said Robert B. Wartnaby was employed by defendant to
run the said steam engine, derrick and mechanical con-
trivance, and said Harry Reuben was employed to attend
to the guide ropes upon said crane; that said Harry Reu-
ben was a carpenter, and was not experienced or qualified
to attend to said crane; that said Robert B. Wartnaby was
a superintendent or foreman of said building and a car-
penter by trade, and was not experienced or qualified to
manage or operate said engine, boiler, crane and me-
chanical contrivance. That after said heavy load had been
attached to said crane, the defendant, the J. C. Mardis
Company, acting through its said servants, caused and

permitted the said load to fall and slip and to descend with
great rapidity in such manner as to be out of control of the
persons operating the crane and engine, and to drop and
fall upon said John Butera upon the sidewalk and street
adjacent to said building, and without giving any warning
to any of the persons upon said sidewalk or street, includ-
ing said John Butera, concerning the said operation of
said crane, and without making any provision whatever
for the protection of persons passing upon said sidewalk
and street, including said John Butera." This paragraph
originally contained allegations of an ordinance of the
city of Omaha, which upon motion of defendants were
stricken from the petition.

Defendants also insist that the evidence shows conclu-
sively that the deceased was guilty of contributory negli-
gence which would prevent the recovery. The argument
seems to be that the deceased might have taken a different
route, and that it was not necessary that he should pass
along the walk under the derrick as he did, and that the
noise of the derrick and of the engine which was operating
it was such as to notify the deceased that it was dangerous
to pass under it. The question of contributory negligence
on the part of the deceased appears to have been fairly sub-
mitted to the jury, and we cannot say that the verdict in
that respect is so clearly contrary to the evidence as to
require a reversal. The statute requires the contractor and
persons in charge of the building operations to so construct
and operate the same as to give proper and adequate pro-
tection to employees. The deceased was not required to
anticipate that this duty would be neglected, and the evi-
dence in regard to the operation of the derrick at the time
is not of such a nature as to convict the deceased of wilful
or gross negligence in passing by the ordinary way in the
performance of his duty. A palpable violation of the stat-
ute by the employer is gross negligence. The jury might
find from the evidence that the negligence of the employer
was such a violation of the statute.

The supreme court of Wisconsin in *Koepp v. National Enameling & Stamping Co.,* 151 Wis. 302, in construing a similar statute borrowed from New York, quotes from a decision of the New York court (*Gombert v. McKay,* 201 N. Y. 27), in which it was said: "It (their statute), in terms, absolutely forbids those employers to furnish or operate, or cause to be furnished or operated, any apparatus therein mentioned of the character and quality described by it. It, in its effect, provides that any employer who, either personally or by another, furnishes for the performance of any named labor a forbidden article shall be responsible therefor. The duty of the employer created by it is personal, incapable of delegation, and unaffected by caution and discrimination in selecting employees for their prudence and competency." It also quoted from another New York case (*Smith v. Variety Iron & Steel Works Co.,* 147 App. Div. (N. Y.) 242) : "The defendant is not held liable for injuries to its workmen occasioned without any fault upon its part. It was at fault in furnishing a scaffold which was not safe, as the statute required it to do. While the scaffold appeared to be safe it was, in fact, insecure. Under the law the employer became responsible for the safety of the scaffold when he directed the workmen to use the scaffold." The Wisconsin court adds: "So it must be held that the legislature intended to make employers, in the situations dealt with by the statute, absolute insurers of the safety of their employees, save in cases of efficient assumption of the risk or contributory negligence."

The statement that the law makes employers "absolute insurers of the safety of their employees" was criticised by some members of the court, and the author of the opinion explained this language in a later case: "That does not mean that the place of employment must be so safe that an employee cannot become injured. The statute makes the employer an insurer as to furnishing such a place as it requires, but not against injury to employees using the place which has been so furnished. * * * Unsafe or

improper conditions are the opposites of safe, suitable, and proper. Safe and proper in that there is no such danger as that which the statute was intended to obviate, within reasonable apprehension. Safety as regards all reasonable probabilities not all possibilities of personal injury. Safe, suitable, and proper, so far as human foresight devoted to the matter, not with ordinary attention merely, but with a purpose to accomplish just what the legislature intended, a place so safe as to render personal injury so remote as to be, at most, merely within the realm of possibility." *Kendzewski v. Wausau Sulphate Fibre Co.*, 156 Wis. 452. This explanation seems to have had the approval of all the court except one judge. The expression, "a place so safe as to render personal injury so remote as to be, at most, merely within the realm of possibility," does not seem to be quite accurate. Possibility is a broad expression. It would seem to require a place so safe that an employee might not be injured by his own gross or even reckless negligence. No doubt the intention of the statute is that the employer is to be an "insurer as to furnishing such a place as it requires." The employee may confidently rely upon the performance of this duty by his employer, and he cannot be held guilty of negligence in acting upon the supposition that the employer has fully complied with the statute. To this extent the statute affects the doctrine of contributory negligence. Our statute expressly provides: "The fact that any employee, servant or other person shall continue to work during the time such owner, contractor or subcontractor has failed to comply with the provisions of this article shall not be considered as an assumption of the risk of such employment by such employee, servant or other person and shall not in any case bar recovery of damages for the failure of such owner, contractor or subcontractor to comply with the provisions of this article."

The noise of the derrick just before the falling of the materials was perhaps unusual. It may be that an expert in the handling of such machinery would have known that there was danger. But the evidence does not show any

such warning to the deceased under the circumstances as would require the court to say as matter of law that he was guilty of such negligence as to preclude a recovery. The deceased had no knowledge as to the construction and use of the derrick. He was performing his duty under the instructions of his employer. He took the ordinary passageway, without any responsibility for the operation of the derrick. The derrick was so constructed, and it was operated in such a way, that the materials with which it was loaded fell upon the deceased. The facts will support the finding of the jury that the employer violated the statute.

The defendants have assisted us with an interesting and complete brief upon the general subject and scope and construction of the statute. In the view that we have taken of the purpose and meaning of the statute, and the public policy it indicates, we cannot say that there is any error in the record requiring a reversal.

AFFIRMED.

LETTON and HAMER, JJ., not sitting.

ROSE, J., dissents.