CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. E. B. COWLES, ADMINISTRATOR OF THE ESTATE OF WILLIAM D. FELKNER, DECEASED.

FILED MARCH 17, 1898.   No. 7922.

Master and Servant: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE: EVIDENCE. The evidence in this case examined. and *held* to disclose such contributory negligence on the part of plaintiff that a verdict and judgment in his favor cannot be sustained.

ERROR from the district court of Jefferson county. Tried below before BUSH, J.  *Reversed.*

*M. A. Low, W. F. Evans, L. W. Billingsley,* and *R. J. Greene,* for plaintiff in error.

*J. H. Broady* and *John Heasty,* contra.

RYAN, C.

This action was brought by William D. Felkner in the district court of Jefferson county for the recovery of damages alleged to have been sustained by him while in the employ of the Chicago, Rock Island & Pacific Railway Company. There was a verdict, on which judgment was rendered for plaintiff in the sum of $2,500. During the pendency of this error proceeding in this court Felkner died and there was a revivor of the action against his administrator. The parties hereinafter will be desig-

nated plaintiff and defendant according to the status of each when the case was in the district court.

The negligence of the defendant charged in the petition was, in substance, as follows: February 12, 1894, and for a long period prior thereto, plaintiff was a wiper in defendant's employ and as such he was under the sole control, directions, and orders of the night foreman of defendant's engine-house at Fairbury. On the date above mentioned plaintiff was ordered by said night foreman to take certain engines in defendant's yards to coal chutes in said yards and fill the tenders thereof with coal and return the same to the engine-house to be placed in stalls therein. Pursuant to said orders, at about 10 o'clock P. M., on said day, plaintiff took one of defendant's engines from the side track on which it stood and caused it to be propelled to defendant's coal chutes and thereupon filled the tender with coal. In the performance of the work required of him to be performed it became necessary for plaintiff to climb from the cab of said engine to the top of the tender or tank thereof and, by the use of a shovel provided by defendant for that purpose, to remove the coal or a part thereof from the apron of the coal chute into the tender and to scatter the same around therein, to permit said apron to be elevated to its proper place. Plaintiff alleged further that he, for the purpose aforesaid, did climb from the cab to the top of the tank, and, after having hoisted the apron and adjusted the coal, attempted to climb back from the top of said tender into the cab, in order to start said engine and move the same to the place to which, by the defendant's said foreman, he had been directed to return it. While plaintiff was climbing from the top of the tender into the cab of the engine he was, as he alleged in his petition, thrown violently from the top of said tank or tender, a distance of twelve feet, to the ground and seriously and permanently injured. The agencies which caused his being thus thrown were at considerable length described in the petition, and, summarized, are as fol-

lows: (1) The failure of the defendant to light the yards in the vicinity of the coal chutes; (2) the failure of defendant to provide plaintiff with a lantern or light of any kind; (3) the failure of defendant to provide any steps, holds, or other means by which plaintiff could safely climb from the top of the tank or tender to the floor of the cab, when so required to do in the performance of the work required of him; (4) that defendant had knowingly and negligently permitted the iron strap, by which the tool-box on the right side of said tank or tender was fastened and locked in its place, to become broken and out of repair and to stick up over the top of said tool-box; (5) that the work plaintiff was then performing was entirely outside his duties as a wiper and a work he was not accustomed to perform, and that defendant neglected and failed to give plaintiff any instructions regarding the proper and safe manner of performing the work; (6) that defendant should have required an hostler to run said engine to and from the coal chutes, and if this had been done, it would not have been necessary for plaintiff to attempt to climb from the top of the tank to the floor of the cab at said time and place, but defendant carelessly and negligently failed to cause its engine hostler to run said engine to and from the coal chutes, but required plaintiff to do this in addition to the work of loading the tender with coal, thereby requiring the plaintiff to do the work of two men.

In considering the evidence we should bear in mind the fact that the jury found for the plaintiff, and that from this circumstance it is presumable that the testimony of plaintiff was accepted as true, rather than such as was in conflict therewith. The fifth and sixth of the above assignments of negligence should be rejected from consideration, for the reason that the injury complained of cannot, either upon the averments of the petition, or upon plaintiff's own testimony, be attributed to the fact that plaintiff ran the engine to the coal chute, or to the fact that he was not accompanied by an hostler. The

accident happened, according to his own theory, after the coal had been emptied from the chute into the tender and while the engine was not in motion. Whether the movements of this engine, while coming to the chute had been under the control of an hostler or of some other person was therefore immaterial, for the injury was not attributed to the engine's movement and we cannot consider the proposition that, if there had been an hostler in charge, the plaintiff might have done differently. The other assignments of negligence may be grouped under three heads, of which the first was the failure to furnish proper light; the second was the failure to provide steps, holds, or other means, by which plaintiff could safely climb from the top of the tank to the floor of the cab; and, third, that defendant knowingly permitted the strap on the tool-box to become broken and to project above the .top of said box. There was no evidence that this strap ever was broken, but the testimony of plaintiff was that he thought that, in the darkness, he stumbled upon it. What importance should be attached to the existence of this strap is therefore properly referable to the importance to be attached to the claim that there was an insufficiency of light and of means for furnishing light. There was no attempt to show that the tender could have been provided with steps, holds, or other means whereby plaintiff, with safety, might have descended from the top of the tender or tank to the floor of the cab. There is, therefore, to be considered but one general proposition, and that is the want of light to enable plaintiff from the top of the tank to reach the floor of the cab. This general proposition is divisible into two elements—the failure to light the yards and the failure to provide a lantern, but these need not be considered separately. From the averments of the petition it has already been made to appear that before the accident happened plaintiff had safely taken the engine to the chute, filled its tender with coal, and necessarily had gone to the top of the tank. He was provided with a

torch which, while he was filling the tender, rested on the cab of the engine. This torch was extinguished before plaintiff had completed the distribution of coal in the tender and he was thereafter left in darkness to shovel the coal as best he could. He testified that after he had put up the chute he went to get his torch and get down, and, in climbing on the right hand side of the tender, he slipped on something and fell to the frozen ground. After testifying as above plaintiff was again interrogated concerning the accident, and testified as follows:

Q. How did it happen that you fell?

A. Because I did not have any light to see with.

Q. You stated something about stumbling. What did you say about that?

A. I stumbled on something; I cannot tell what it was.

Q. Where did you try to get down?

A. I tried to get down on the side of the tender and get down into the cab.

Q. Whereabouts?

A. Right on the top of the tool-box.

Q. Down at the end?

A. Down at the end between the engine and the tender, between the cab and the tender.

Q. Was there any step there to get down?

A. No, sir.

Q. Well, did you look afterwards to see what you stumbled on?

A. Yes.

Q. What did you find there?

A. I found a piece of strap-iron sticking up on what is called the hitch, over the tool-box. I could not tell whether it was that I stumbled on or not.

Q. That is upon the top of the tank, is it?

A. Yes, sir.

On cross-examination plaintiff testified that he began to work for the defendant at Fairbury in 1891, and since that date had been in its employ about half the time until

22

the accident, and that much of the time he was in the employ of the company he was a wiper. Being recalled for cross-examination plaintiff testified as follows:

Q. When you were up and the light had gone out you was going to state something, as I understood, about the wind. Do you remember what you were going to say?

A. I remember now. I went to light the torch, but it was so windy I could not light it on top of the tender to see to get down by.

Q. The whole tender was then filled with coal?

A. Yes, sir.

On a further subsequent cross-examination plaintiff gave the following testimony:

Q. You stated you were on the tender when you fell?

A. Yes, sir.

Q. The tender was which way from the engine?

A. The tender was east of the engine.

Q. You was on the right-hand side of the tender?

A. On the tender or the tank.

Q. What part of the tank were you standing on when you fell?

A. On the tool-box some place.

Q. Near the tool-box?

A. On the top of it or near it, I could not say positively.

Q. You could not say whether you was on the top or near the tool-box?

A. No, sir.

Q. How wide a space do you think you walked on at that place?

A. Well, I should judge it was a foot and a half.

Q. What had been the width of the space you had walked on from the time you started to go to get the torch? You say you walked some distance before you fell.

A. I stumbled over the coal to get the torch. Yes, sir.

Q. How far had you been from the torch when you first started to get it?

A. Perhaps to the back end of the tender.

Q. That would be about how far, Mr. Felkner, as near
as you can give it?

A. In the neighorhood of six or eight feet.

Q. And the space you was walking on was about how
wide?

A. Well, I could not say positively that I staggered on
it at the farther end.   I climbed over the coal and started
to get my torch.

The testimony of the plaintiff with reference to the
happening of the accident has been given with circum-
stantial minuteness to show just how it was described by
plaintiff himself.   The substance of his testimony we
think is correctly summarized in the following statement.
He stopped the engine in such a position that the tender
could be filled from the chute and then, or before that
time, placed his lighted torch on the top of the cab.  While
filling and arranging the coal in the tender the torch was
extinguished.   Having finished the arrangement of the
coal in the tender, plaintiff attempted to walk, at first,
perhaps, on the coal, but at any rate when the accident
happened, on the tank from near the rear end of the ten-
der, to the cab.  This tank was about a foot and one-half
in width and on it there was a tool-box, of which the top
could be fastened down by means of a hasp.   The theory
of plaintiff was that he probably stumbled on this hasp
and fell to the ground and was thereby seriously injured.
There was no explanation by plaintiff as to why he failed
to walk upon the coal instead of the tank, though he was
examined on that subject.   He admitted that he fully
knew how the engine, the tender, and the tank, were con-
structed, and how they were situated with reference to
each other, and yet that, of his own accord, he took the
risk of being able, in the darkness, to walk on the tank,
knowing, as he must have known, that in following the
tank he must, in some way, get over the tool-box resting
upon it.   This testimony was undisputed; indeed, no per-
son other than plaintiff was able to testify with relation
to these particular matters.   Though it is conceded, as

plaintiff claims, that the foreman improperly required plaintiff to fill the tender lighted only by a torch, it would be a most violent assumption to suppose that this foreman was required to anticipate that, if his torch should be extinguished, plaintiff, in the darkness, would attempt the perilous feat which he admits was attempted by him. As a matter of fact the injuries he sustained were, upon his own showing, attributable, in a very large degree, if not entirely, to his own negligence. The judgment of the district court is therefore reversed.

REVERSED AND REMANDED.