JOHN WENTINK, APPELLANT, V. RUTH FARNHAM TRAPHAGEN, TRUSTEE, ET AL., APPELLEES.

291 N. W. 884

FILED MAY 3, 1940. No. 30756.

*Lloyd E. Chapman,* for appellant.

*Baylor, TouVelle & Healey, Peterson & Devoe* and *J. J. O'Dowd, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

SIMMONS, C. J.

This is an action wherein plaintiff seeks to recover for personal injuries. The plaintiff was an employee of the Hardy Furniture Company. The employer is made a defendant because it is paying workmen's compensation to the plaintiff and is subrogated to, and interested in, plaintiff's cause of action. The defendants Traphagen and Farnham own the premises where the accident occurred. The defendants Mason are tenants of a part of the premises.

The plaintiff alleged the facts recited herein. The defendants landlord and tenant, answering separately, denied generally, and alleged that, if plaintiff suffered damage, it was proximately caused, and contributed to, by his own negligence, and that the plaintiff had assumed the risk of injury. After plaintiff had rested his case, the trial court dismissed the action as to the tenants. At the close of all testimony, the trial court directed a verdict for the defendant landlords. Plaintiff appeals.

The building where the accident occurred is a three-story structure with a basement. The defendant tenants occupied the second and third floors. An automatic gas water heater in the basement, owned by the defendant

tenants, served the two upper floors of the building. A first-floor tenant used the basement for·storage.

The basement was 80 feet long, 16 feet wide, and 7 feet high. The floor was of dirt. The entry to the basement was through a trapdoor in the sidewalk. A stairway led down into a small room under the sidewalk, and a door opened from this antechamber into the basement proper. Gas meters, serving the tenants, were in the south end of the basement. A small window opened from the antechamber into the basement. On the day of the accident it was dirty. The only natural light into the basement was through the openings above described. Fifteen feet from the south end, there was an electric light which turned on at the bulb; beyond that a few feet were racks from which clothing was hanging. At the north end of the basement was a pit 10 feet wide, 16 feet long, and 5 feet 2 inches deep in which the furnace and gas water heater were placed. On either side of the pit, there was a strip of basement floor 4 feet in width, running north and south. The top of the pit wall was even with the floor, except that, along the south side and for a short distance along the west side from the southwest corner, the dirt floor was 2 or 3 inches below the top of the pit walls. There were no guard rails around the pit wall. The hot water heater was in the northwest corner of the pit, and pipes lead from it up to the ceiling.

Because of defendants' motions and the rulings thereon, plaintiff is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence. *Moncrief v. Interstate Transit Lines*, 129 Neb. 168, 261 N. W. 163.

On the morning of the accident, plaintiff delivered two gas ranges to the building for the tenant to be exchanged for other stoves then in use. It was customary for the merchant to connect the new stoves with the gas line if the purchaser so requested. The plaintiff was requested by the tenant to make the necessary connections, and he agreed to "change the stoves." It was customary to first

shut off the gas at the water heater and then at the meter before an old stove was disconnected and a new one connected to the gas line. It is not shown that the defendants knew of this custom. The plaintiff asked the location of the gas valve and the valves of the hot water tank. The defendant told him they were in the basement and to go into the basement through the steel door on the outside of the building. Plaintiff said, "all right." Nothing else was said.

Plaintiff had never been in the basement before. He entered the basement and found the meter without difficulty. He saw and turned on the drop light, went back to the door, looked for a light switch and found none. At that point, he "couldn't see very good." He then started north along the center of the basement, came to and went around the clothes on the west side, and beyond them, walked back to the east, looked around for lights and could not see any. He felt in his pocket for matches, found two and lit those, one at a time, and "flared around to see where the tank was." He saw the top of the tank and the pipes and heard the noise of the tank, which indicated to him where the burner was located. He walked northwest 6 or 8 steps while the matches were burning. At the point where his last match went out, he was 4 to 7 feet from the pit. Although he saw the top of the burner across the pit, from the light of the matches, he did not "necessarily" know that the burner was installed below the surface of the basement floor. He saw nothing to indicate a pit. He was looking for pipes, did not look down at the floor, although, had he looked down at that point, he supposes he "would have" seen the pit—"maybe not." If there was a reflection from the burning gas at the base of the heater, he did not see it because he was "looking at the top." When his last match went out, he did not turn back for more matches or other light, but figuring he "could make it," in the darkness, walking slowly, feeling with his feet, he took 2 or 3 more steps forward, and fell into the pit at the southwest corner.

There was no emergency or peril requiring plaintiff to go forward, or need for speed in making the connection. The plaintiff was not led into a false sense of security. On the contrary, his testimony shows that he realized there was possible danger ahead. That the pit was dangerous to one walking about in the dark is apparent. It is likewise apparent that it was not dangerous to any one properly going about the basement when ordinary means of artificial lighting were used.

Plaintiff contends that he was an invitee and that the defendants were negligent in maintaining the pit unlighted and unguarded, and without warning the plaintiff of the unsafe and dangerous condition of the premises.

Defendants, by their motions, presented, among others, the propositions that the evidence shows that the plaintiff's negligence was the proximate cause of his injuries, and also that, under the comparative negligence statute, plaintiff was barred from recovery.

That plaintiff was seriously injured is not questioned.

"Negligence is not actionable unless it be the proximate cause of the injury to the complaining party." *Wagner v. Watson Bros. Transfer Co.,* 128 Neb. 535, 259 N. W. 373. "Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury." *Anderson v. Byrd,* 133 Neb. 483, 275 N. W. 825. See, also, *St. Joseph & G. I. R. Co. v. Hedge,* 44 Neb. 448, 62 N. W. 887. "Two acts of independent source are not concurrent in causing an injury, if one of them merely furnishes a condition by which such injury is made possible, and later such injury occurs through the efficient, self-acting, and independent operation of the other. In such case the latter and not the former is the proximate cause of such injury." *Johnson v. Mallory,* 123 Neb. 706, 243 N. W. 872.

Section 20-1151, Comp. St. 1929, is set out in full in *Mundt v. Chicago, R. I. & P. R. Co.*, 136 Neb. 478, 484, 286 N. W. 691, and was construed in *Morrison v. Scotts Bluff County*, 104 Neb. 254, 177 N. W. 158, where it was held that, "if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery."

"The question of whether or not an act or omission is negligence is for the jury to decide when reasonable minds may honestly say from the evidence under a proper definition of negligence that it was, and is not to be submitted to the jury if there is not sufficient evidence to support a finding in the affirmative." *Johnson v. Mallory, supra.* See, also, *McDonald v. Omaha & C. B. Street R. Co.*, 128 Neb. 17, 257 N. W. 489; *Johnson v. City of Omaha*, 108 Neb. 481, 188 N. W. 122; *Guthrie v. Missouri P. R. Co.*, 51 Neb. 746, 71 N. W. 722.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." 45 C. J. 942. See *Eaton v. Merritt*, 135 Neb. 363, 281 N. W. 620. "Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence." *Welsh v. City of South Omaha*, 98 Neb. 148, 152 N. W. 302. A duty rests upon a person to exercise ordinary care for his own safety. *Gardner v. Metropolitan Utilities District*, 134

Neb. 163, 278 N. W. 137. "A person who knowingly and of his own volition exposes himself to an obvious danger cannot recover damages for any injury which he might have avoided by the use of reasonable care." *Kerwin v. Thompson, Belden & Co.*, 110 Neb. 251, 192 N. W. 692.

Applying the above rules, the conclusion is reached that the proximate cause of plaintiff's injury was his own acts, and that he acted without the due care for his own safety that the law requires.

Assuming, but not deciding, that defendants were negligent and that their negligence contributed to plaintiff's injury, the negligence of plaintiff contributed directly thereto as the moving cause of the accident, and because thereof, plaintiff cannot recover.

Of course, if the defendants were not guilty of actionable negligence, plaintiff's negligence was not, strictly speaking, contributory negligence, but, in either event, the trial court properly directed a verdict, and the result is the same. *De Honey v. Harding*, 300 Fed. 696.

This conclusion is amply supported by the holdings of this court in *Winterson v. Pantel Realty Co.*, 135 Neb. 472, 282 N. W. 393, wherein it was not shown that the lack of lights was the proximate cause of an accident, and in *Sodomka v. Cudahy Packing Co.*, 101 Neb. 446, 163 N. W. 809, where the plaintiff backed into an elevator shaft without looking, and it was held that his negligence was so gross in comparison with the defendant's that a recovery was barred. The court stated: "His relying upon a custom when nature had given him eyes is not excusable."

Cases from other jurisdictions more nearly in accord with the factual situation and denying recovery are: *Schabel v. Onseyga Realty Co.*, 251 N. Y. Supp. 280, (233 App. Div. 208), involving a fall down a dark stairway, holding that "danger lurks in groping about in strange place in darkness" and that a "greater duty" rests upon one under those circumstances to exercise care; *Benton v. Watson,* 231 Mass. 582, 121 N. E. 399, holding that "one who walks in the total darkness of a strange hall is likely

to encounter obstructions to his passage and pitfalls to his feet," and denying recovery "because, as a matter of law, the plaintiff was not in the exercise of due care;" *Weller v. Consolidated Gas Co.*, 198 N. Y. 98, 91 N. E. 286, where a plaintiff proceeded into a darkened space, holding that he did so at his own risk and that he failed to exercise the degree of care essential to a recovery; *Steger v. Immen*, 157 Mich. 494, 122 N. W. 104, where a plaintiff groped along a corridor, opened an unlocked door, stepped into the dark, and fell down a' shaft, holding it to be an "act of folly" barring recovery "to enter on a cruise of exploration and discovery without stopping to determine whether it was safe to proceed;" *Brugher v. Buchtenkirch*, 167 N. Y. 153, 60 N. E. 420, where there was no "special stress of circumstances" requiring a person to go on a "tour of discovery" in the dark in a strange building, holding that there was a "duty of exercising greater caution or of refraining from proceeding" and that to proceed was contributory negligence barring recovery; *Hudson v. Church of the Holy Trinity*, 250 N. Y. 513, 166 N. E. 306, where plaintiff proceeded in the darkness of an unlighted, strange hallway and fell downstairs, holding that she, having elected to proceed in the darkness, was guilty of contributory negligence as a matter of law; *Kurre v. Graham Ship By Truck Co.*, 136 Kan. 356, 15 Pac. (2d) 463, where plaintiff, following a voice, proceeded along a dock, feeling his way with his feet and fell, holding that it was his duty to refrain from proceeding into the darkness of strange surroundings without finding out where he might safely go, that he proceeded at his peril, and when he met with an accident, was guilty of negligence as a matter of law.

This opinion will not be further extended by a digest of additional decisions. We cite, however, the following, which have been reviewed in reaching the conclusion here announced: *Murphy v. Cohen*, 223 Mass. 54, 111 N. E. 771; *Bedell v. Berkey*, 76 Mich. 435, 43 N. W. 308; *Medcraft v. Merchants Exchange*, 211 Cal. 404, 295 Pac. 822; *Massey v. Seller*, 45 Or. 267, 77 Pac. 397; *De Honey v. Harding, supra;*

*Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100.

The plaintiff not being entitled to recover in any event, it is not deemed necessary to discuss those features of the case that present questions of the legal liability of the defendants as owners and tenants toward an invitee on the premises.

The judgment of the district court is

AFFIRMED.