EMMA WERTZ, ADMINISTRATRIX OF THE ESTATE OF WILLIAM WERTZ, DECEASED, APPELLANT, V. LINCOLN LIBERTY LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE.

41 N. W. 2d 740

Filed March 7, 1950. No. 32695.

*William L. Walker* and *Earl Ludlam,* for appellant.

*Cline, Williams & Wright,* and *Warren C. Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, administratrix of the estate of William Wertz, a window washer whose death was caused when he fell from a window of defendant's building, brought this action to recover damages sustained by the widow and next of kin of deceased, whose death was alleged to have been proximately caused by negligence of defendant, its agents, and servants. Defendant denied that it was guilty of any negligence proximately causing the death, and alleged that it was proximately caused by decedent's own negligence, which was more than slight as a matter of law, and also that decedent, an independent contractor with full knowledge of the elements and conditions involved, assumed the risk as a matter of law.

At the conclusion of all the evidence, the trial court sustained defendant's reserved motion to direct a verdict, and dismissed plaintiff's action primarily upon the ground that decedent was guilty of negligence more than slight as a matter of law, and that he assumed the risk. As we view the case, the latter ground requires no further discussion.

Plaintiff's motion for new trial, or in the alternative for judgment notwithstanding the verdict, was overruled, and she appealed, assigning substantially that the trial court erred in: (1) Refusing to permit plaintiff, at the beginning of the trial, to amend her amended petition by

rider, to plead and allege the violation of rule 54, Nebraska Safety Codes, relating to window washers, promulgated under section 48-412, R. S. 1943, which rule purportedly required defendant, as owner of the Lincoln Liberty Life Insurance Building, to install safety bolts on both sides of each window therein and furnish workmen engaged in window washing with a safety belt; (2) erred in refusing to admit said code in evidence or take judicial notice thereof; (3) erred in excluding certain proferred evidence with reference to customs and usage with relation to said code and window washing in Lincoln; and (4) that the judgment was not sustained by the evidence, but contrary thereto, and contrary to law. We conclude that the assignments should not be sustained.

The salient facts are not in dispute. Defendant owned a six-story office building on the northwest corner of 11th and O Streets in Lincoln. The two upper floors were occupied by defendant. Other offices were rented to tenants for whom defendant furnished janitor services and kept the windows washed. There were 152 weatherstripped windows on the east and south sides of the building. Such windows were approximately two and one-half feet wide and six feet high, divided in the center so that the lower pane would slide upward and the top pane downward. The windows had been painted over in 1942, and in a number of instances the paint had dried so that the upper window stuck and could not be lowered until freed by driving a putty knife between the top and the window. From January 1946 until September 3, 1947, the day of the accident, all of the windows remained in substantially the same condition, of which decedent was at all times fully cognizant. He was the owner of and engaged in the management and operation of a window-washing business, under the firm name of Capital Window Cleaning Company. He had been so engaged continuously since September 1, 1945. His father, who had owned and operated the business since 1919, retired at that time because of illness, and gave the business to

decedent. Prior thereto, decedent had been a salesman for several years, although when a boy about 15 years old, he first began to assist his father and learn the window-washing business. He was 25 years old at the time of the accident, and during the past two years had been engaged in window washing for various concerns in Lincoln.

Sometime about January 1946, defendant's engineer and decedent had a conversation with reference to a contract to wash the windows of defendant's building. The windows were then very dirty, and decedent quoted a price of $35 for washing them the first time. After that was done, and he had observed the work involved, he agreed to submit for defendant's consideration a regular monthly price for such services. They were thus washed the first time, after which decedent, upon discovering that they were "fairly easy to wash," offered to wash defendant's windows each month for $22.50, which offer was accepted. Thereafter, until the accident on September 3, 1947, decedent continued to wash the windows each month, and on that date was washing them for the twentieth time. During that period, he was assisted at various times by his brother-in-law and two brothers. He was required to and did furnish all the tools and materials for doing the job, hired and paid his own employees, entirely supervised the work, chose his own time for doing it, and controlled every detail in connection therewith, without any supervision or control whatever by defendant. Each month he submitted a statement to defendant, which it paid by check to the Capital Window Cleaning Company. Plaintiff alleged that decedent was an independent contractor, and the evidence conclusively established that relationship.

Defendant owned a safety belt before and at the time of the accident. It hung in the basement of defendant's building. Defendant's engineer had talked with decedent about such safety belt when he first came on the job, but it was never used by him. It was produced in court

at the request of plaintiff, but never was offered in evidence. There were no bolts or hooks on the outside of the windows of defendant's building to which said type of safety belt could be attached; however, the one owned by defendant was a type which would hook over and attach inside the window sill.

The windows were washed on both the inside and outside. On the day of the accident, decedent and his brother-in-law started work about 8:30 a. m., and washed windows continuously on defendant's building, except for a period of about 15 minutes, until 11:00 a. m., at which time decedent was hurriedly working, very rapidly finishing the job by washing the windows of an office on the fourth floor, from where the accident happened.

When the upper windows would slide down, they were ordinarily washed outside by sitting on the window sill, body outside, legs inside, with the window pulled down upon them. When the upper windows would not slide down, the lower window would ordinarily be left open slightly while decedent himself, standing outside on the window ledge, would hold to the bottom of the frame of the upper window with one hand, while washing it with the other. Usually one of his employees stood inside and assisted him. However, at the time of the accident, decedent, without such assistance or the use of a safety belt, was standing outside, on a ledge about eight inches wide, with his feet sideways at an angle thereon, because it was too narrow to stand otherwise, while he held on by grasping with his fingers a one-inch flange running along the side of the window. Thus standing at one window, as he was pulling a squeegee across an adjoining window to the south of the one upon which he was then standing, he evidently lost his grasp on the narrow flange, and fell from the ledge to the marquee three stories below, receiving injuries which caused almost instant death. In that connection, decedent generally went outside and washed the windows which would not slide down from the top, because, without dispute, he recognized that the proce-

dure was so fraught with danger that he did not want his employees to take the chance of injury.

Many propositions of law were ably discussed in briefs of counsel, but as we view the record, there is but one question involved, to wit: Was plaintiff's decedent guilty of contributory negligence more than slight as a matter of law, proximately causing the accident, thus barring plaintiff's recovery? We conclude that he was.

As was done in Weitz v. United States Trust Co., 143 Neb. 703, 10 N. W. 2d 623, we may assume without deciding, that the trial court erred in its refusal to permit plaintiff to amend her petition by pleading the safety code and alleging its violation, and erred in refusing to admit it in evidence or take judicial notice thereof, and erred in excluding proferred evidence relating to customs or usage in the business of window washing in Lincoln. We so assume without deciding, since, as hereinafter observed, such action of the trial court would be error without prejudice. In other words, we may assume without deciding, that defendant was guilty of negligence per se, yet plaintiff could not recover because of decedent's contributory negligence, which as shown by evidence adduced, was conclusively more than slight as a matter of law.

Ordinarily the violation of a statute intended to protect the life, health, and safety of employees constitutes actionable negligence, but such negligence must be shown to have been the proximate cause of the injury. 56 C. J. S., Master and Servant, § 191, p. 890; Smith v. Morton Motor Co., 145 Neb. 396, 16 N. W. 2d 843; Winterson v. Pantel Realty Co., 135 Neb. 472, 282 N. W. 393.

The safety code here involved, if applicable, which we do not decide but assume, does not abrogate the defense of contributory negligence, and no other applicable statute that we have been able to find abrogates it in similar cases. It is generally the rule that, except where statutes requiring employers to take certain precautions for the protection and safety of their employees expressly abro-

gate the defense of contributory negligence, a violation of the provisions of such statutes does not deprive the employer of the defense of contributory negligence or relieve the employee from exercising due care for his own safety. 39 C. J., Master and Servant, § 1031, p. 819; 56 C. J. S., Master and Servant, § 425, p. 1245; 35 Am. Jur., Master and Servant, § 245, p. 676; Weitz v. United States Trust Co., *supra;* Butera v. Mardis Co., 99 Neb. 815, 157 N. W. 1024.

Decedent could not be included as a person in a class unable "to exercise self-protective care" discussed in Restatement, Torts, § 483, p. 1262.

As stated in Restatement, Torts, § 463, p. 1227: "Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

Also, as stated in § 466, p. 1230: "The plaintiff's contributory negligence may be either

"(a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence of which danger the plaintiff knows or has reason to know, or

"(b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm."

It is elementary that when the evidence on the issues of negligence or contributory negligence is undisputed, or but one reasonable conclusion can be drawn from the evidence, the question is ordinarily one of law for the court.

There is no evidence that any part of the windows or building was defective or gave way. The condition of the windows was not only readily observable by a mere glance or simple test, but also, without dispute, decedent knew full well their condition in January 1946, and knew

as well that they remained substantially the same until September 3, 1947, over all of which time he had washed them on 19 prior occasions. The mode, method, or manner of washing them rested entirely in his hands, and under his voluntary direction, supervision, and control. He was a mature man, and an experienced window washer. He could have easily freed the top windows or required defendant to do so. He could have used defendant's safety belt, or refused to wash them without a safety belt of his own choosing, or refused to have washed them at all. In that situation, however, he took no precaution whatever for his own safety, but rather exposed himself to danger by his own negligence.

From an examination of the record before us, viewed in the light most favorable to plaintiff, no other conclusion could be reached except to hold that decedent intentionally and unreasonably exposed himself to danger, of which he was at all times cognizant, and that his conduct fell far short of the standard to which a reasonable man should conform in order to protect himself from harm. We therefore conclude that his own negligence, more than slight as a matter of law, proximately caused the accident, thus barring any recovery by plaintiff.

In Haskell v. Kurtz Co., 181 Iowa 30, 162 N. W. 598, L. R. A. 1917F 881, a case strikingly similar to that at bar, the court said: "We are constrained to hold that one who finds that he cannot lower a window so that he may wash the same from inside the room, deliberately steps upon a ledge six inches wide, from which a fall to the street below will work great injury, with no precaution save the hold which plaintiff took, is in no position to recover for an injury which results, even though, had there been due care on the part of the employer, the plaintiff would have had no occasion to leave safety on the inside for clearly apparent danger on the outside."

In Green v. Pyne, 289 F. 929, 28 A. L. R. 616, involving a similar situation, the court quoted with approval

from Haskell v. Kurtz Co., *supra,* cited similar cases, and arrived at the same conclusion. See, also, Wentink v. Traphagen, 138 Neb. 41, 291 N. W. 884; Weitz v. United States Trust Co., *supra;* Winterson v. Pantel Realty Co., *supra;* Kerwin v. Thompson, Belden & Co., 110 Neb. 251, 192 N. W. 692; and Chicago, R. I. & P. Ry. Co. v. Cowles, 54 Neb. 269, 74 N. W. 579, which involve facts comparable with those at bar, and sustain our conclusions. Cases relied upon by plaintiff are generally distinguishable upon the facts or statutory provisions applicable thereto, and are not controlling.

In the light of the foregoing, we are not required to discuss other contentions made by plaintiff, and, for the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.