141 So.2d 134 (1961)
Jesse M. KNIGHT
v.
John Henry THOMAS and the Travelers Indemnity Company.
No. 5383.
Court of Appeal of Louisiana, First Circuit.
November 20, 1961.
On Rehearing April 23, 1962.
Certiorari Denied May 24, 1962.
*135 Taylor, Porter, Brooks, Fuller & Phillips, David M. Ellison, Jr., Baton Rouge, for appellant.
Sartain McCollister & Smiley, McCollister & Belcher, by Rolfe H. McCollister, Baton Rouge, for appellees.
Before ELLIS and HERGET, JJ., and MILLER, Judge pro tem.
HERGET, Judge.
Defendants, John Henry Thomas and the Travelers Indemnity Company, appealed from a judgment rendered in favor of plaintiff, Jesse M. Knight, against them, individually, jointly and in solido, in the sum of $5,000 together with legal interest thereon from date of judicial demand until paid and for costs of court; said damages being awarded for the loss of plaintiff's eye as a result of the negligence of defendant, John Henry Thomas.
On the night of January 31, 1960 plaintiff and defendant, brothers-in-law, accompanied by relatives, were returning in separate vehicles from a visit to Franklinton, Louisiana. Thomas, in driving back to Baton Rouge, noted some mechanical difficulty in the left rear wheel of his car and stopped at a filling station, the Gulf Coast Service Station, in Amite, Louisiana, to ascertain the nature of the difficulty. He jacked the car up and after examining the brake drum concluded that his difficulty was in the bearing, whereupon he removed the axle from the car, at which time plaintiff and his father-in-law with whom he was riding drove into the service station as was their customary procedure when returning on this particular route. They noted the difficulty defendant was having and plaintiff joined his brother-in-law in an effort to assist him to make the repairs. Believing that the causation of the trouble was a defective bearing, defendant obtained a cold chisel and ball-peen hammer and with these instruments with plaintiff assisting by squatting alongside defendant, resting the axle on the concrete floor of the service station, plaintiff steadying same by holding it in place with his hands, defendant proceeded by using the cold chisel and hammer to attempt to dislodge the bearing from the axle. Though the evidence does not positively *136 show it, it appears that a bearing is placed on an axle under pressure and is fitted tightly to same. Some progress was made in dislodging the bearing, however, the movement of the bearing stopped and defendant with increasing forceful hammering on chisel attempted to dislodge same. It appears that defendant had been following this procedure for some 10-15 minutes with plaintiff steadying the axle in the position above described during this time when a sliver of steel from either the hammer, the cold chisel or the bearing, dislodged, entered plaintiff's eye and as a result it became necessary to surgically remove the eye.
Defendants denied any negligence on their part, denied coverage under the policy and, in the alternative, alleged that plaintiff was guilty of independent and contributory negligence which barred his right to recover, setting forth:

"14.
"In the alternative, and only in the event that the Court should hold that John Henry Thomas was guilty of any negligence which was a proximate cause of the accident herein sued on, which is denied, then, and in that event, defendants aver and allege that plaintiff was guilty of independent and contributory negligence, which was a proximate cause of the accident sued on, and is a bar to his recovery herein, said negligence consisting particularly, but not exclusively, of the following acts or omissions to act:
"(a) Plaintiff, in holding the axle that defendant John Henry Thomas was attempting to repair with a hammer and chisel, assumed the risk of being struck in the eye by a piece of metal or spark.
"(b) Plaintiff knew, or should have known, that it was unsafe to strike the aforesaid axle and bearing with a hammer and chisel, and condoned and acquiesced in the actions of said defendant in attempting said repairs.
"(c) Plaintiff failed to protest against the forceful manner in which defendant John Henry Thomas struck and continued to strike the aforesaid axle with a hammer and chisel.
"(d) Plaintiff failed to turn his head or shield his eyes in an attempt to safeguard against being struck by flying metal or sparks caused by the aforesaid defendant striking the axle with a hammer and chisel."
Under the contract of insurance the company defendant undertook to pay on behalf of the insured defendant all sums for which he might become legally obligated to pay as damages because of bodily injury sustained by any person "* * * arising out of the ownership, maintenance or use of the owned automobile. * * *"
It is the position of the defendant insurance company that under this policy the action undertaken by defendant Thomas was a major repair job and in consequence does not come within the meaning of the word "maintenance" as used in the policy. We are of the opinion that the activity in which defendant was engaged when this unfortunate accident took place clearly had to do with the maintenance of the vehicle and therefore coverage was afforded John Henry Thomas while so engaged.
Though in his petition plaintiff sought some $25,376 for his damages, by stipulation and agreement of counsel it was agreed that in event of judgment for plaintiff on the merits, the judgment would be for the sum of $5,000 plus interest and costs. Inasmuch as the judgment was for that amount, the question of quantum is not before us for review.
The only issues, therefore, remaining for us to decide are (1) was the defendant John Henry Thomas negligent in causing the injuries to plaintiff for which he seeks damages; and (2) was plaintiff guilty of contributory negligence which bars his right to recover?
*137 Plaintiff, in his petition and in his argument before this Court, maintains that it was the sudden unanticipated forceful striking by John Henry Thomas of the cold chisel with the hammer which resulted in the sliver of steel being precipitated into his eye and furthermore that this action took place despite the warning given to defendant by plaintiff to "watch it" immediately preceding the action. A reading of the record reveals, however, a perceptibly different state of facts. As related heretofore herein, the two parties had been engaged in this activity for some ten or fifteen minutes during which time it became evident that in order to dislodge the bearing from the shaft or axle increasing forceful action was necessary. According to plaintiff he noted that his brother-in-law became somewhat "aggravated" when he was unable to remove the bearing and struck the chisel with the hammer with greater and greater force. In fact, his testimony was that when he observed this happening he, at that time, took occasion to warn his brother-in-law to "watch it." The transcript reveals that both plaintiff and defendant were trained in mechanics and were used to using their hands. In handling metal objects in the procedure utilized here, it would appear that it would be obvious even to a layman unaccustomed to any mechanical devices to be conscious of the foreseeability of the possibility of an accident happening just as this did from the striking of metal to metal. It is apparent from the record, also, that both parties were conscious of the danger involved for plaintiff stresses the fact that he warned defendant of the possibility of imminent danger and defendant in his testimony, in responding to questions, said:
"Q. Do you know of your knowledge whether Jessie told you to watch out or slow down? A. Both of us told one another we'd better watch ourselves.
"Q. When was that now? A. I say both of usafter we started I told him and he told me that we'd better watch ourselves, you know, on account of we might get hit in the eye, but we had no idea
"Q. And after that, what happened? A. It didn't take long until he had done got hit in the eye.
"Q. You went on and hit it after you had talked to him about that, just kept on hitting it like you had been doing? A. Well, I was hitting it all the time I said that.
"Q. You never stopped? A. No, sir."
The evidence shows that the accident occurred a "lick or two" after plaintiff had warned defendant to watch it. There is no evidence that these two last licks were any more forceful than many more which had preceded them. Thus, we may conclude from the record that any one of the many blows struck by defendant on the chisel could have precipitated the steel chip into plaintiff's eye.
That appellant was guilty of negligence which proximately caused appellee's injury, we think there can be no doubt. However, equally apparent to us is the imprudent negligent act of the plaintiff in assuming the position which he did of holding the axle with his hands, having his eyes focused on the work unprotected by the use of safety goggles from the danger of flying metallic objects in such close proximity to the point of contact of the hammer on the chisel and the chisel on the bearing. Throughout the entire procedure plaintiff at no time made any attempt to shield his face or protect himself from an obviously dangerous situation and, though counsel for plaintiff maintains that the negligence of defendant in heedlessly striking the precipitating blow without warning to plaintiff was the sole proximate cause of plaintiff's injury, certainly the intensity of the force with which defendant was striking the metallic objects was sufficient without any other warning to apprise plaintiff of the dangerous potentialities of their activities. Each party to this accident was equally aware of the danger inherent in such operation and *138 plaintiff's voluntary intentional and unreasonable exposure to obvious danger from dislodged steel slivers or other hard objects resulting from defendant's forceful striking with the hammer on the chisel without in any way shielding his eyes or wearing any protective goggles concurred with the negligent act of defendant and was a proximate cause of his unfortunate injury.
Plaintiff relies on the case of Morris v. Lipkin, a decision of the Supreme Court of Pennsylvania, reported in 317 Pa. 422, 176 A. 434, as authority for his assertion that defendant was negligent and plaintiff was free from contributory negligence. In that case one Mumford, a regular customer of a filling station operated by plaintiff's father, stopped in the station for the purpose of inflating a tire on his truck. In the course of his operation a metal rim of the tire became loose, thereupon Mumford walked to the store, run in connection with the service station, and picked up a hammer which was on the counter, telling plaintiff he wished to borrow the hammer to knock the rim in place. Plaintiff instructed Mumford not to use the particular hammer which he had picked up for the reason that "it chipped around the edges" but to find another one. After receiving this instruction Mumford placed the hammer back on the counter and proceeded to look for another hammer. Meanwhile, plaintiff continued with his work about the station in the course of which he was required to walk to a car parked within a few feet of where Mumford was working on the rim of his tire. Despite plaintiff's warning, Mumford was using the defective hammer to strike the rim of the tire. The record in the case does not reflect whether or not plaintiff was aware that defendant was using the said defective hammer or that plaintiff observed him using it. As Mumford struck a sharp blow on the metal rim a piece of steel chipped off from the head of the hammer and struck plaintiff in the left eye, resulting in the total destruction of its sight. The Court held that Mumford having been admonished by plaintiff as to the dangerous character of the hammer and his own observation of the defective hammer served as a warning to him that to use the hammer in disregard of the warning and of his observation constituted negligence making him responsible for the damages sustained by plaintiff. In the case there is no showing that a plea of contributory negligence was filed. Factually, however, the case is readily distinguishable from the instant case in that in the Morris case the accident happened not while Morris was assisting in the operation but was merely passing by attending to other duties at the instant when the chip flew from the hammer, unlike the facts in the present situation where the plaintiff was actively engaged in assisting in the operation, and negligently doing so, fully aware of his voluntary exposure to obvious potential danger.
In Dallas et al. v. Crescent Forwarding & Transportation Company, Ltd. et al., La. App., 13 So.2d 113, the Court of Appeal of Orleans concluded that a plaintiff, familiar with the methods of unloading cotton, who was standing on a dangerous section of a New Orleans wharf watching cotton being unloaded was guilty of contributory negligence which precluded his right to recover for injuries sustained by him when struck by a bouncing bale of cotton because, though well aware of the fact that high density cotton when being unloaded may bounce and roll in any direction, he inadvertently diverted his view from the scene of the operation and was struck and injured by a bouncing uncontrolled bale of cotton. At page 118, the Court said:
"In Johnson v. New Orleans Terminal Co., 154 La. 515, 97 So. 795, 796, the court said:
"`It appears that at the time of the accident plaintiff was not an employee of the defendant, but defendant's employees were engaged in operating the derrick and in unloading the steel bars from the gondola car. Under the circumstances disclosed by the testimony *139 of all of the witnesses, the danger resulting from the operation of the derrick and the swinging chains was obvious to any one at the scene, and must therefore have been doubly so to an experienced longshoreman.
"`The danger being visible and obvious, the failure of the plaintiff to avoid it or to reasonably attempt to do so was such negligence or contributory negligence as will bar recovery. 20 R. C.L. 112; 29 Cyc. 515; Bianchi v. Del Valle, 117 La. 587, 42 So. 148.'"
In the case of Little v. A. Wilbert's Sons' Lumber & Shingle Company, 142 La. 122, 76 So. 582, the Supreme Court of this State held that a plaintiff who was familiar with the operation of defendant's mill and who had gone on the premises to buy fire wood and was injured was guilty of contributory negligence in failing to observe a falling piece of timber thrown by an employee of the shingle company. The Courtafter determining that the agent of the defendant was guilty of negligence through his forgetfulness as to the presence of the plaintiff beneath the conveyor beltsaid, at page 582 (So.):
"This would not absolve the defendant company from liability, for the old man was on the premises on business, and therefore by implied invitation, and was entitled to have due care taken against injuring him; but he was familiar with the situation, and by putting himself within range of the falling pieces of wood he, too, was careless and negligent, and, having, thereby contributed to the injury, he cannot recover against defendant for it. In all probability the pieces of wood that struck him had glanced or ricocheted in falling upon the pile of wood."
In Words and Phrases, Vol. 9, p. 706, de verbo in verbum, "contributory negligence," we find numerous citations to judicial determination of the meaning of these words. We adopt as our own:
"`Contributory negligence' may be either an intentional and unreasonable exposure to danger created by defendant's negligence, of which danger plaintiff knows or has reason to know, or conduct which in other respects falls short of the standard to which a reasonable man should conform in order to protect himself from harm. Wertz v. Lincoln Liberty Life Ins. Co., 41 N.W. 2d 740, 744, 152 Neb. 451, 17 A.L.R.2d 629."
Though we conclude that plaintiff's injuries resulted from the negligent act of the defendant, John Henry Thomas, we also are of the opinion that plaintiff has barred his own recovery by his contributory negligence in placing himself in a dangerous, precarious position and in failing to protect himself, as a prudent man would, from a foreseeably perilous situation.
For the reasons assigned, the judgment of the lower court is reversed and plaintiff's suit is dismissed at his costs.
Reversed and dismissed.

On Rehearing.
A rehearing was granted in this matter to consider twelve alleged errors which plaintiff contends resulted from our original decision holding plaintiff, Jesse M. Knight, guilty of contributory negligence, thereby reversing the judgment rendered in his favor by the lower Court and barring his right to recover damages against The Travelers Indemnity Company, insurer of John Henry Thomas.
Learned counsel for plaintiff contends the record reveals a different factual situation than that which we depicted in our original opinion. In his application for rehearing plaintiff states: "The court's statement of the facts further contends that `it became evident that * * * increasing forceful action was necessary'. Plaintiff can find no facts in the record to support this contention. It appears that the Court has inserted its own opinion in this specific instance rather than quote the factual situation."
*140 It is the contention of plaintiff's counsel that the defendant was only lightly tapping the axle with the hammer, then suddenly, without warning, proceeded to strike hard, forceful blows with the hammer, which action was unanticipated by plaintiff. We believe counsel's contention in this respect is unsupported by the record. Furthermore, from plaintiff's remarks immediately prior to his injury and by his testimony, we are of the opinion that plaintiff was equally aware of the danger reasonably to be anticipated or foreseen, from the activities engaged in by plaintiff and defendant in removing the bearing from the axle as was defendant whom we found negligent in forcefully striking the cold chisel with a hammer while plaintiff was holding the axle with his hands and without the protection of goggles. To show that our factual conclusion in this respect is clearly borne out by the record, we quote from plaintiff's own testimony:
"Q Now, how was he tapping on that bearing?
"A Well, he wasn't tapping very hard to start with, but seemed like it didn't want to move, so he got a little rougher and rougher with it.
* * * * * *
"Q He began tapping on it and then what happened?
"A Well, it wouldn't move and so he kept beating harder. Finally I told him he was beating it hard, I says you'd better watch it. So while I am sure he was aggravated already before I told him that, but I don't really know if he paid any attention or not, but he kept beating harder and about, oh, after a lick or two something hit me in the eye.
* * * * * *
"Q You stated that you had previously told him to watch out, or to slow down, that he was hitting it a little too hard?
"A And not to hit so hard, yes.
"Q And why did you tell him that?
"A Well, I figured it could be dangerous.
"Q How long had he been hitting on this bearing with these tools?
"A Oh, ten, fifteen minutes, I don't know, I am not sure just how long." (Dr.Ex.Tr. p. 29)
* * * * * *
"Q Now, how long had he been chiseling before this piece of metal hit you in the eye?
"A Oh, I don't know, I'd say ten, twelve, or fifteen minutes, I am not positive.
"Q And you have also stated that he first started tapping it easy?
"A Yes, sir.
"Q And he started hitting it harder and harder as time went by?
"A Yes, sir.
* * * * * *
"Q Now, you have testified that as he was unable to get the collar and the bearing off initially he started hitting harder and harder?
"A Yes, sir.
"Q This continued some time before the metal flew out, didn't it?
"A Yes, sir, ten or twelve minutes, I'd say, I don't know.
"Q You say he just kept hitting it harder and harder?
"A And I asked him to stop.
"Q But nevertheless you continued to hold it?
"A Yes, sir.
"Q Did you shield your head or turn your eyes away in any manner?
"A Well, I don't remember if I didnot thinking nothing would come off and hit me in the eye or face or anything.

*141 "Q But you were looking directly toward him?
"A I was looking directly toward him."
(Cr.Ex.Tr. pp. 39, 40 and 41)
Plaintiff further complains that this Court was in error in finding that under the circumstances of the happening of this accident and the position plaintiff assumed while defendant was striking the cold chisel with the hammer, plaintiff might reasonably have anticipated or foreseen the resulting injury he sustained would follow from his action. This observation of the Court appears to have been apparent to plaintiff himself as disclosed by his testimony quoted supra and from the following excerpt of Thomas' testimony: "* * * after we started I told him and he told me that we'd better watch ourselves, you know, on account of we might get hit in the eye, * * *." (Dr. Ex. p. 46)
Learned counsel for plaintiff next alleges this Court was in error in concluding that both parties were conscious of the danger involved in their action. He maintains that only the defendant was aware of the force with which he was going to strike the chisel with the hammer and therefore he, Thomas, only had knowledge of the forthcoming danger. This observation of counsel could only be true if the evidence revealed defendant to have been only lightly tapping the chisel with the hammer and suddenly forcefully struck same. However, under the factual finding of this Court, based upon quotations from plaintiff's testimony supra, the evidence reveals that defendant had been striking the cold chisel with the hammer with forceful blows for some time prior to the blow which caused the sliver to fly.
Plaintiff contends this Court was in error in holding that the last two blows struck by the defendant were not any more forceful than those preceding them. From the evidence there is nothing to show that the last two blows were harder or more forceful than those immediately preceding them, but the evidence does show the intensity of the force of the blows had been increased by defendant for a period of time sufficient to have caused plaintiff to reasonably anticipate or foresee that the resulting injury would follow.
The next error which counsel for plaintiff contends was committed by us was the finding that any one of the many blows struck by defendant could have precipitated the steel chip which caused the loss of plaintiff's eye. Though without question in the beginning possibly some of the blows struck by defendant were light and harmless for a period of time, after defendant increased the intensity of the force with which he struck the chisel with the hammer, the peril was apparent equally as well to plaintiff as to defendant Thomas.
Counsel for plaintiff alleges this Court committed error in finding that it was an imprudent negligent act of the plaintiff in assuming the position he did of holding the axle with his hands and having his eyes focused on the work unprotected by the use of safety goggles from the danger of flying metallic objects. Plaintiff has no quarrel with our holding that defendant was negligent and that his negligence resulted in his, plaintiff's, injury, but disagrees with our conclusion that he was guilty of contributory negligence. If defendant were negligent, it is apparent to us that plaintiff was guilty of contributory negligence in performing this operation for (other than a different task assumed by each, defendant holding the hammer and striking the blows and plaintiff holding the axle) their positions were identical.
In our original opinion we said: "* * In handling metal objects in the procedure utilized here, it would appear that it would be obvious even to a layman unaccustomed to any mechanical devices to be conscious of the foreseeability of the possibility of an accident happening just as this did from the striking of metal to metal. * * *" The use of the verbiage "foreseeability of *142 the possibility of an accident" perhaps may be criticized as placing upon plaintiff the obligation to anticipate the mere possibility of an accident happening resulting from his actions. However, taken in context with the opinion what we meant, and now hold, was that in handling metal objects in the procedure utilized here, it would appear that it would be obvious even to a layman unaccustomed to any mechanical devices to reasonably anticipate or foresee that as a consequence thereof from striking metal to metal an injury might occur as did happen to plaintiff's eye.
The other alleged errors complained of by counsel for plaintiff are either repetitious or were fully answered in our original opinion.
Learned counsel for plaintiff maintains that the decision of Paul v. Traders & General Insurance Co., La.App., 127 So.2d 801, presents a factual situation comparable to the instant case under the authority of which plaintiff herein should be awarded judgment. In the cited case plaintiff, a former employee of Roy E. Malone, entered the premises of Malone for the purpose of getting some shotgun shells. As he entered the yard Leon Parker, an employee of Malone, was operating a pulpwood loader and a chain or line on the hoist or lifting operation of the loader became entangled. Plaintiff assisted in untangling the line and stepped back on a narrow ledge or running board on the machine when the operator, Leon Parker, caused the boom of the machine to come suddenly back to its resting place, amputating one of plaintiff's fingers and a portion of his right hand. There is notably a different factual situation presented in the Paul case from that shown to exist in this case in the respect that the Court found both plaintiff and Parker were familiar with the operation of the pulpwood loader and plaintiff had the right to expect Parker would not start the operation thereof without warning plaintiff and for that reason the Court held plaintiff was not guilty of contributory negligence. Contrarily, in the case here under consideration plaintiff was fully aware of the conduct of defendant and his actions and chose to continue to assist defendant in the operation, though to pursue such course he should have, with reason, anticipated the resulting injury which he sustained.
For these reasons and for the reasons assigned in our original opinion we are of the opinion that plaintiff's injuries resulted from the negligent act of the defendant, John Henry Thomas; we also are of the opinion that plaintiff has barred his own recovery by his contributory negligence in placing himself in a dangerous, precarious position and in failing to protect himself, as a prudent man would, from a foreseeably perilous situation.
The judgment of the lower Court is reversed and plaintiff's suit is dismissed at his costs.
Reversed and dismissed.