CULPEPPER, Judge.
This is a suit for damages for personal injuries. The plaintiff, Hubert J. Timpa, was gratuitously helping his step father-in-law, Leo Cole, build a new carport on Cole’s home. A nail being hammered by Cole flew into plaintiff’s eye. Defendants are Cole and his liability insurer. A jury awarded plaintiff $10,000. Defendant appealed. Plaintiff answered the appeal, seeking an increase in the award.
The issues on appeal are: (1) Was the defendant Cole negligent? (2) Did plaintiff assume the risk of the hazard which caused his injury? (3) Is the quantum of the award adequate?
The facts are that plaintiff, then 33 years of age, was helping Cole put the roof on the new carport. A rain storm was threatening and they were working hurriedly to complete the roof. Sheets of plywood were being nailed on top of the rafters. They had come to the last piece, measuring 4 feet by 6% feet, to be inserted near the southeast corner of the roof. Plaintiff held it in place while Cole tacked each end to a rafter. Then they both began to nail it to the rafters, which were about 16 inches apart. They were both facing in a northerly direction, toward the top of the roof, and were working about 3 feet apart. Plaintiff was on the left and Cole on the right. Suddenly a 6 penny nail struck the inside corner of plaintiff’s left eye.
Defendant first contends the evidence does not show whether the nail which struck plaintiff’s eye was being ham *61 mered by Cole or by plaintiff. This argument is based largely on a statement given by plaintiff in the hospital to an insurance adjuster, in which he said he didn’t know whether his nail or Cole’s struck him in the eye. However, on the trial of the case, both plaintiff and Cole testified it was Cole’s nail. Hence, there was ample evidence from which the jury in its discretion was justified in concluding that the nail which struck plaintiff’s eye was being hammered by the defendant Cole.
Defendant’s next contention is that Cole was not negligent. The argument here is that at the time of the accident plaintiff and Cole were working 3 or 4 feet apart and there was no unreasonable risk of foreseeable harm. Taylor v. National Indemnity Company, 215 So.2d 203 (La.App. 3rd Cir. 1968); LSA-CC Article 2315; Prosser, Law of Torts, 3rd Ed., Sec. 31.
Plaintiff testified they were working about “arm’s length” apart. Mr. Cole said they were about 3 feet apart. They were working very hurriedly. Plaintiff was wearing hard soled shoes which he said slipped on the roof, so he was laying on his hip with his face close to the roof. Cole was on his feet but stooping while he nailed. It is our conclusion there is sufficient evidence from which the jury was justified in finding that Cole was nailing too close to plaintiff’s face. Due to the propensity of nails improperly struck to fly through the air, there was an unreasonable risk of foreseeable harm to plaintiff. It is largely a fact issue as to which we find no manifest error in the jury’s conclusion.
The next question is assumption of the risk. The argument here is that plaintiff knew or should have known the danger of a nail “skipping” when hit by a hammer. That with full knowledge of this risk plaintiff voluntarily undertook to assist Mr. Cole. Defendant cites Knight v. Thomas, 141 So.2d 134 (La.App. 1st Cir. 1961), where plaintiff was holding an automobile axle on the floor while defendant attempted to dislodge a bearing from the axle by pounding it with a cold chisel and hammer. A sliver of steel flew off and hit plaintiff in the eye. The court held plaintiff also should have foreseen such a hazard and that he assumed the risk.
The present case is readily distinguishable on the facts from Knight v. Travelers Insurance Company, supra. In the Knight case the plaintiff, with knowledge of the risk, was holding his head close to the danger point. In the case at bar, plaintiff knew or should have known the danger of nails “skipping.” But he did not know, nor did he assume the risk, that Mr. Cole was suddenly going to start hammering a nail in close proximity to his face. There is ample evidence in the record from which the jury could have concluded plaintiff did not assume this kind of risk.
Defendant also contends plaintiff was contributorily negligent in not wearing safety glasses. There is no evidence that carpenters should wear safety glasses. The only testimony in this regard is that of the defendant Cole, a carpenter by trade, who said that journeymen carpenters usually do not and are not required to wear safety glasses while driving nails.
The final issue is the quantum of the award. The accident occurred on July 6, 1967. The nail entered plaintiff’s left eye, where it remained lodged until plaintiff actually pulled it out. He was seen initially by Dr. Dewey Archer, a specialist in diseases of the eye, who is also the treating physician. Plaintiff was admitted to the hospital and the puncture wound of the eye surgically closed. He was released from the hospital on July 12.
However, cataracts later developed. Plaintiff was readmitted to the hospital on September 27, 1967. The cataracts and also the lens of the eye itself were surgically removed. Plaintiff was fitted with an arti *62 ficial contact lens. With this lens, plaintiff’s vision is normal, 20-20, but Dr. Archer estimated disability of the eye as a whole at 50% because of the necessity of wearing the artificial lens.
Plaintiff was discharged from the hospital October 1, 1967 and returned to work about November, 1967, working on construction jobs. Dr. Archer testified plaintiff should be able to perform this type of work without substantial difficulty.
The medical expense to the date of the trial was approximately $1900. Plaintiff contends there will be future medical expense for annual eye examinations, changes in the artificial lens and soaking and wetting solutions for the wearing of the lens. There is a dispute as to the amount of wages lost, plaintiff contending this item is $4,320 while defendant contends it is only $2,176 since plaintiff’s union was on strike during his convalescence and work on construction jobs is, at best, irregular because of the weather and other interruptions.
As stated above, the total jury award was $10,000, which amount includes both general and special damages. (The final judgment gives defendant credit for $500 previously paid under the medical payments provision of the policy and no issue is raised as to this.) We find no abuse of the large discretion of the jury as to the quantum of this award for personal injuries.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD and MILLER, JJ., are of the opinion a rehearing should be granted.