John Bardo, Plaintiff-Appellee, v. The Chicago River and Indiana Railroad Company, a Corporation, Defendant-Appellant.

Gen. No. 50,824.

First District, Third Division.

September 21, 1967.

Richard O. Olson, Alvin E. Domash, Thomas J. Healey, and Robert R. Lanham, of Chicago, for appellant.

Baskin & Server, of Chicago (Fred S. Posner, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff brought suit to recover for injuries sustained during the course of his employment as a switchman. He charges general negligence pursuant to the provisions of the Federal Employers' Liability Act and failure of an automatic coupler to operate properly in accordance with the requirements of the Federal Safety Appliance Act. The court directed a verdict on both theories of liability and submitted only the question of damages to the jury. The jury returned a verdict for $32,500 and judgment was entered thereon. Defendant appeals.

Defendant contends that the court erred in (1) directing a verdict for plaintiff as to liability under the Safety Appliance Act; (2) directing a verdict for plaintiff as to liability under the Federal Employers' Liability Act; and (3) refusing to allow defendant to cross-examine the plaintiff concerning his negligence and refusing defendant the right to examine the plaintiff pursuant to the provisions of Section 60 of the Civil Practice Act.

The accident occurred at about 10:30 a. m. on February 28, 1956, while the plaintiff and other members of his train crew were moving railroad cars at the Realemon juice plant in Chicago. The Realemon factory extends in a north and south direction and is serviced by a single switch track running in the same direction. This switch track runs into the factory and then connects with a series of main line tracks which generally parallel the building on its easterly side. Train movements into and out of the plant are accomplished by the use of a switch located about five railroad car lengths north of the plant doorway. The interior of the plant has track space to spot or place five railroad cars south of the doorway. There is a dock

located along the west side of the railroad track both inside and outside of the plant. The dock is about five feet high and there is a space of about six inches between it and cars parked along the siding.

On the day of the accident the train crew was moving a cut of three cars with a switch engine. Plaintiff testified that the last car was to be left in the factory and that he rode on one of the cars until the engine had pushed the cars into the proper position. He then got onto the platform and signalled for the train to stop. When the train was stopped, he got off the platform and down between the cars with the intention of uncoupling the last car, the one intended for Realemon. He shut off the air with his right hand, pulled the pin lifter with his left hand, heard it click into place, and signalled the conductor to pull the engine and remaining two cars back north. According to his testimony the couplers failed to operate properly, the Realemon car failed to disengage from the other two cars, and as the train pulled slowly to the north, the Realemon car moved with the rest of the train, pinning him between the platform and the moving cars. He further testified that Thomas Osak, the fireman, eventually uncoupled the cars by operating a pin lifter from the east side of the train and that the cars were then pulled apart. The engine and two cars moved several feet to the north in this operation. Plaintiff's testimony was substantially corroborated by Stanley Niemec, another member of the crew.

The fireman Thomas Osak testified however that the switching crew was in the process of removing cars from the plant and not in spotting any there. According to his testimony the train moved toward the plant and then stopped six or eight feet from the factory door. After the door was opened the train proceeded south into the factory. The leading car was three or four feet inside the building when the engineer shouted, "Oh God, I think Bardo got hurt." Osak then jumped down from the engine

and ran to where Bardo was lying which, according to Osak, was several feet inside the factory doorway between the platform and the car.

■■ Defendant first contends that the court erred in directing a verdict as to liability under the Federal Safety Appliance Act. To establish liability under the applicable provision of that statute [1] the plaintiff must prove that the injury was caused by failure of the coupler to work properly, and this requirement is satisfied by a showing that the coupler failed to operate at the time in question. Carter v. Atlanta & St. A. Bay Ry. Co., 338 US 430 (1949); Myers v. Reading Co., 331 US 477 (1947); Affolder v. New York C. & St. L. R. Co., 339 US 96 (1950). Proof of a violation of section 2 of the Safety Appliance Act eliminates the consideration of contributory negligence for any purpose. 45 USC § 53; Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 130 F2d 971 (1942).

Defendant contends that a question of fact existed as to whether or not plaintiff's injuries were caused by a failure of the coupler and that the case should have gone to the jury on that issue. Defendant argues that if the testimony of Thomas Osak were taken as true, the car with the allegedly faulty coupler could not have been in the building at the time of the injury and the accident could not have occurred in the manner described by the plaintiff and the witness Stanley Niemec. It should also be noted that Osak testified that the train crew was preparing to remove cars from the factory and not preparing to leave cars there. If this were true, then the allegedly faulty coupler could not have been involved in the oper-

---

[1] 45 USC § 2 provides as follows:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

449

ation regardless of the position of the train relative to the factory.

██ Issues of fact in such cases as the instant one must be submitted to the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ on the issue of liability. Rogers v. Missouri Pac. R. Co., 352 US 500 (1957); Williams v. New York Cent. R. Co., 402 Ill 494, 84 NE2d 399. In the instant case the jury should have been allowed to decide whether the coupler was involved in the accident and whether it failed to operate. The court erred in directing the verdict on the issue of liability under the Federal Safety Appliance Act.

██ The other points raised in this appeal involve the admissibility of evidence concerning contributory negligence. Under the F. E. L. A., contributory negligence does not bar recovery, but damages are to be diminished in proportion to the amount of negligence attributable to the employee.[2]

After the witness Stanley Niemec had testified and before the plaintiff took the stand, the court determined that this was a case entirely within the purview of the Federal Safety Appliance Act and that provisions of the F. E. L. A. concerning negligence were inapplicable.

[2] 45 USC § 53 provides:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

450

Therefore on plaintiff's motion, counsel for defendant was ordered to restrict his cross-examination of the plaintiff and to omit any reference to contributory negligence. At the same time the court held that if the defendant produced any evidence to remove this case from application of the Federal Safety Appliance Act, it would be allowed to recall the plaintiff for examination concerning alleged contributory negligence. Later in the course of the trial and after Thomas Osak had given an account of the accident which conflicted with the plaintiff's, the defendant asked for permission to call the plaintiff as an adverse witness. The request was denied, and the defendant charges error in this ruling.

■ Holding, as we do, that the issue of liability under the Safety Appliance Act should have been submitted to the jury, it follows that if a jury in its deliberations should determine that the defendant was liable on the general negligence count but not liable for any violation of the Safety Appliance Act, then contributory negligence would be a factor in apportioning damages. The court therefore erred in denying the defendant an opportunity to examine the plaintiff with regard to contributory negligence.

For the reasons herein expressed the judgment is reversed and the cause remanded with directions to grant a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.