SIMON B. JENKINS, JR., Plaintiff-Appellee, *v.* CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellant.

(No. 55425;

First District—May 9, 1972.

956

Edward J. Wendrow, Patrick C. Mullen, and J. J. Hannenburg, all of Chicago, (Winston, Strawn, Smith & Patterson, of counsel,) for appellant.

Barry L. Kroll and Robert F. Lisco, both of Chicago, (Wolfberg & Kroll, and Lisco & Field, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, an employee of Flintkote Company of Chicago Heights, Illinois, brought an action against defendant railroad for injuries he sustained while engaged in moving a boxcar. The complaint contained two counts alleging common law negligence and two counts alleging violations of the Safety Appliance Act (45 U.S.C. § 1 et seq.). The jury returned a general verdict against defendant for $325,000 and judgment

was entered accordingly. Defendant's motions for directed verdict, judgment notwithstanding the verdict and for a new trial were denied and the railroad appeals.

Plaintiff's duties, as an employee of Flintkote, were to load and unload boxcars and trucks at its loading docks in their freight yard. Incident to these duties was the necessity of moving boxcars on the siding up to and away from the loading docks. This movement was ordinarily accomplished manually by the use of a tool known as a "car mover." [1] The tool made it possible for one or several men to move cars spotted along the 762 feet of spur track in Flintkote's freight yard.

On October 9, 1967, defendant's train crew moved several railroad cars into the Flintkote yard. Two of these cars, coupled together, were placed at spots 9 and 10 in the yard. The two cars are hereinafter referred to as the north car and the south car. Defendant's crew testified that they set the brakes on both cars after they were spotted.

The following day the task of unloading the cars commenced. Pursuant to his supervisor's directions, plaintiff secured a "car mover" to move the south car to the loading dock. Another employee positioned himself on top of the south car to release the brakes and later apply them when the car reached the desired position. The supervisor was to assist by pushing the south car with a fork lift truck. Plaintiff operated the pin lift handle on the side of the car which raised a pin out of the coupler assembly into an "up" position. This operation enables the cars to uncouple as they are moved apart. Plaintiff then positioned himself inside the rails between the two cars, placed the car mover under the wheel of the south car and proceeded to operate it. As he attempted to jack the south car forward, his supervisor placed the fork lift truck in motion against the car and the wheels spun. Despite the force applied, the south car would not move. Plaintiff then checked the coupler pin and observed that it remained in an "up" position. Another employee stood outside the rails to assist plaintiff with the car mover in a second attempt to uncouple the cars. The pin was still in its "up" position. As force was applied the second time, the south car moved and plaintiff began to walk behind it, pushing and pumping the car mover. The two cars did not uncouple, however, and the southwest wheel of the north car struck plaintiff's right foot and pulled him down upon the rail under the car. He sustained traumatic amputations of the lower third of both legs. Testimony at trial indicated

---

[1] This is a device with a long wooden handle and a metal shoe at the end which operates by the use of leverage. The shoe is wedged against the wheel of a railroad car at the rail and the exertion of manual force upon the handle causes the wheel to roll, thus moving the car.

that tests of the equipment were made by the railroad after the injury occurred, and the couplers and brakes of both cars were found to be in normal operating order.

In this appeal, defendant raises the following contentions for reversal: (1) the trial court erred in denying defendant's motions for directed verdicts because (a) the plaintiff presented no evidence sufficient to raise a fact question for the jury as to whether defendant was guilty of a violation of the Safety Appliance Act; (b) the plaintiff presented no evidence sufficient to raise a fact question for the jury as to whether defendant was guilty of common law negligence; (c) the railroad car which caused the injury was not in use on the defendant's line at the time of the injury as required by the Safety Appliance Act and therefore the statutory count should not have been submitted to the jury; and (d) contributory negligence is a complete defense to an action by a non-employee of the railroad predicated upon an alleged violation of the Safety Appliance Act, plaintiff was guilty of contributory negligence as a matter of law, and thus the count should not have been submitted to the jury.

(2) The trial court erred in denying defendant's motion for judgment notwithstanding the verdict for the same reasons advanced in the first contention.

(3) The trial court erred in denying defendant's motion for a new trial because (a) the verdict is against the manifest weight of the evidence; (b) the trial court erred in admitting speculative and misleading opinion evidence; (c) the trial court erred in denying defendant's motions for directed verdict as to unproven grounds of recovery; and (d) the trial court erred in giving Safety Appliance Act instructions to the jury.

In effect, defendant argues that it did not violate any of the provisions of the Safety Appliance Act and, even if it did, the Act is not applicable in this case, nor did it breach any duty of care imposed under the law of common law negligence. On the contrary, plaintiff received his injuries as a result of his own negligence and that of his fellow employees and therefore the trial court erred in denying its motions.

On the other hand, plaintiff contends that, as a direct result of the failure of the two boxcars to uncouple despite actuation of the uncoupling device in the usual and ordinary manner, the failure of the hand brakes to prevent movement of the north car, and the railroad's negligent spotting of the cars on the siding, the north car followed the south car down the track causing the loss of his legs.

*OPINION*

We note at the outset that this case was submitted to the jury

with instructions on two theories of recovery, common law negligence and violation of the Safety Appliance Act. No special interrogatories were tendered so that in the event of a general verdict, it could be determined which theory of recovery it was predicated upon. We also note that the defendant did not tender separate verdicts for each count. Consequently, this court cannot know which count was the basis of the verdict. It is settled that where several causes of action have been alleged and a general verdict results, the verdict will be sustained against a general motion for directed verdict or a motion for judgment notwithstanding the verdict if there are one or more good causes of action or counts to support it. (*City of Litchfield v. Thorworth* (1929), 337 Ill. 469, 169 N.E. 265; *Wolford Morris Sales, Inc. v. Weiner* (1966), 75 Ill.App.2d 238, 221 N.E.2d 308.) In this case, the defendant submitted separate motions for directed verdicts on the common law negligence count and the Safety Appliance Act count. Since the separate counts would not have gone to the jury had either or both of the motions been granted, we must review the trial court's decision on each motion. However, the lack of special interrogatories and verdicts testing the general verdict renders the above rule applicable to defendant's contention that the court below erred in denying judgment notwithstanding the verdict. Therefore, as to that argument, the existence of one good cause of action would dictate that the denial of the motion be upheld.

■■■ We initially address ourselves to the contention that there was insufficient evidence presented at trial to raise a fact question as to a violation of the Safety Appliance Act. Injuries resulting from a violation of the Act give rise to action for damages by the injured person. (*Boyer v. Atchison, Topeka & Santa Fe Railway Co.* (1967), 38 Ill.2d 31, 230 N.E.2d 173.) In such an action the plaintiff is not required to prove negligence or a specific defect in the equipment that proximately caused the injury, but only that the equipment failed to perform efficiently, thereby causing the injury. The failure of the equipment to perform as required by the Act is itself an actionable wrong, totally independent of the law of negligence, and that liability cannot be escaped by proof of due care or diligence. (*Boyer v. Atchison, Topeka & Santa Fe Railway Co., supra; Bardo v. Chicago River & Indiana Railroad Co.* (1967), 87 Ill.App.2d 445, 231 N.E.2d 713.) Therefore, to present a fact question for the jury under the Safety Appliance Act count, plaintiff was only required to present evidence showing that the injury was caused by a failure of the equipment to operate in accordance with the Act, and this requirement is satisfied by a showing that the equipment failed to function at the time in question.

■■ Plaintiff alleged violations under both the automatic coupler section (45 U.S.C. § 2) and the hand brake section (45 U.S.C. § 11) of the Act. The automatic coupler section provides:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The section, as construed in the cases cited above, imposes an absolute duty upon the railroad to equip and maintain its cars with secure and efficient couplers, and evidence indicating that a coupler did not automatically couple or uncouple on any particular occasion constitutes a violation rendering the railroad liable for resulting injuries.

■■ In the case at bar, the record indicates that plaintiff operated the uncoupling pin in the ordinary and customary manner, that the pin remained in an "up" position during plaintiff's initial efforts to move the car, that the south car did finally move, but that the cars failed to uncouple as expected and plaintiff was injured. This evidence raises an inference that the coupler failed to operate on this occasion, and we believe that it was sufficient to raise a fact question for the jury. Defendant contends, however, that the pin in the coupler, when in an "up" position, rests on a small metal lip in its hole. That lip is designed to hold the pin up until a jolt on the coupler loosens it and causes it to fall into the coupler. The pin thus engages when two cars are brought together and it secures the coupler to prevent it from opening, completing the automatic coupling operation. It is contended that the cars were jolted by the plaintiff operating the car mover, and his supervisor operating the fork lift truck, prior to the uncoupling. The jolt caused the pin to fall into the coupler and the cars failed to uncouple. The pin was designed to fall when jolted, and in this case, that is exactly what occurred. The equipment operated normally. Consequently the plaintiff's evidence showed only normal operation and there was no fact question for the jury.

■■ Defendant's argument, however, assumes a burden of proof which is incorrect. Plaintiff is not required to show operation inconsistent with design, but only that the coupler failed to perform on the occasion in question. The operation being attempted here was not coupling, but uncoupling, and the evidence shows that plaintiff performed all requisite operations to accomplish that end but that the cars failed to uncouple. Use of the fork lift truck against the car may be evidence which would tend to establish that excessive force was applied, but the testimony

that the pin remained up after the first attempt to move the car when the fork lift was spinning its wheels, just as easily infers that this force would not have caused the pin to fall in a coupler that was efficient. Defendant argues, in effect, that the equipment performed in accordance with its design under the circumstances. However, this is not the standard imposed. The Act itself imposes the standard and that standard requires efficient operation on every occasion. Here the evidence indicated that the equipment failed under circumstances which could be inferred to be nomal operation, and we must hold that a fact question was raised which the court correctly submitted to the jury.

■■■ The hand brake section of the Act provides:

"It shall be unlawful for any common carrier subject to the provisions of [this Act] to haul, or permit to be hauled or used on its line, any car subject to the provisions of [this Act] not equipped with appliances * * *, to wit: All cars must be equipped with * * * efficient hand brakes; * * *."

As under the automatic coupler section, the plaintiff needed only to show that the brake on the north car had been applied and that it had failed to function in order to raise a factual issue. (*Boyer v. Atchison, Topeka & Santa Fe Railway Co., supra.*) There was testimony by railroad employees that the brakes on both the north car and the south car were set when the cars were spotted on the day before the injury occurred. There was no evidence in the record indicating that anyone released the brakes on the north car prior to the occurrence, and this raises an inference that they were still set when the north car rolled forward upon plaintiff. Thus, the evidence was sufficient to infer a Safety Appliance Act violation and there was a factual question for the jury.

Defendant next contends that it could not be held liable under the Safety Appliance Act count because the cars in question were not in use by the railroad on its line at the time of the accident. The cars were delivered to the Flintkote Company at its freight yard the day before the accident. The spur tracks in that yard were owned by Chicago Heights Terminal Transfer Railroad Company, a subsidiary corporation wholly owned by the defendant, and leased to Flintkote. None of defendant's employees were present at the time of the accident and Flintkote was exercising exclusive control over the cars. Therefore, the cars were not in use on the defendant's line at the time of the accident and it cannot be held responsible for the injury.

■■■ It is true that a railroad cannot be held liable for injuries resulting from violation of the Safety Appliance Act unless the equipment proximately causing injury is in use "on its line" at the time of the injury.

Mere prior use by the railroad of the car is not a sufficient basis for liability. (*Lyle v. Atchison, Topeka & Santa Fe Railway Co.* (C.A. 7th Cir., 1949), 177 F.2d 221; *Tisneros v. C. & N.W. Ry. Co.* (C.A. 7th Cir., 1952), 197 F.2d 466.) However, Federal cases have repeatedly held that a car is in use on a railroad's line, for purposes of the statute, when it has been delivered to a user on its own track for loading and unloading, particularly when that user is not a railroad and neither maintains nor operates railroad equipment (See *Barney v. Staten Island Rapid Transit Railway Co.* (C.A. 3d Cir., 1963), 316 F.2d 38; *Monongahela Railway Co. v. Black* (C.A. 4th Cir., 1956), 235 F.2d 406; *Hunter v. Missouri-Kansas-Texas Railroad Co.* (D.C. Oklahoma, 1967), 276 F.Supp. 936.) In the *Monongahela* case the facts were similar to those at bar, and the court reasoned, at 235 F.2d 406, 407:

> "Even in the broadest sense, it cannot be said in this case that the Coal Company operated an independent railway system. The Coal Company owned no engines or other rolling stock and it operated none. It did not and was not equipped to inspect and repair freight cars; nor did appellant expect it to do so. The Coal Company was a customer of appellant whose sole connection with the cars was in the loading of them. The placing of the cars for loading and the loading of them were all a part of the interstate movement of coal over appellant's railway system. At some inconvenience, the cars might have been loaded on appellant's main line, in which case there could be no doubt as to the application of the Act. We are not prepared to hold that a railroad is relieved of its responsibility to provide safe appliances when it places one of its cars on a side track for the sole purpose of having it loaded with freight to be hauled by it. In this case, the side tracks would have been utterly valueless without the railroad. As used, they operated to promote commerce over appellant's line of railroad. [Citations omitted.]"

The reasoning is equally applicable to the case at bar. Even though the spur tracks in the freight yard were leased by Flintkote and the loading and unloading operations were exclusively conducted by them, the entire spotting and removal operation was conducted by the defendant railroad. Flintkote neither maintained nor operated railroad equipment and had no facilities for doing so. The company was completely reliant upon the railroad for the safe condition of the cars delivered. The spur tracks were useless without the railroad's nearby main line and were merely an extension of the railroad's operating line, promoting business for the road. The purpose of the Safety Appliance Act is to protect against dangerous and faulty equipment, and to relieve the railroad of liability under these

circumstances would frustrate the purpose of the Act. (See *Barney v. Staten Island Rapid Transit Railway Co. supra.*) We hold that the equipment in this case was in use on the defendant's line at the time the injury occurred.

■■ Defendant next contends that contributory negligence is a complete defense in an action by a non-employee of a railroad predicated upon an alleged violation of the Safety Appliance Act, that the record indicates that plaintiff was contributorily negligent as a mater of law, and that its motion for a directed verdict should therefore have been granted. Defendant cites *Crane v. Cedar Rapids & Iowa City Ry. Co.* 1969, 395 U.S. 164, in which the U.S. Supreme Court held that whether the defense of contributory negligence is available as against a non-railroad employee in an action under the Safety Appliance Act is to be determined by state law. The court said at 395 U.S. 164, 167:

"* * * we have consistently held that under the present statutory scheme the definition of causation and the availability of the defenses of assumption of risk and contributory negligence are left to state law."

And under the law of Illinois, it is clearly settled that, where an action is based upon a breach of statutory duty and the statute does not provide that those defenses are not available, contributory negligence constitutes a bar to recovery. (*Wabash, St. Louis & Pacific R.R. Co. v. Thompson,* 1882, 10 Ill.App. 271; *Browne v. Siegel, Cooper & Co.,* 1901, 191 Ill. 226.) Defendant contends that the Safety Appliance Act makes no mention of available defenses and therefore contributory negligence is a bar to recovery in Illinois.

■■ The cause of action in the case at bar, however, is not identical to those in the cases cited by defendant. The rule that contributory negligence is available as a defense to an action based upon breach of a statutory duty unless the statute forbids it is valid when a violation of that statute is considered negligence *per se* or *prima facie* evidence of negligence. However, in *Boyer v. Atchison, Topeka and Santa Fe Railway Co., supra,* the court clearly held that a violation of the Safety Appliance Act which causes injury gives rise to a cause of action based upon strict liability in no way dependent upon the law of negligence. Drawing from decisions in Federal cases, the court said at 230 N.E.2d 173, 176—7:

"* * * it is apparent that a breach of the Safety Appliance Act does give rise to a civil cause of action which is separate from any cause of action based on negligence and that absolute liability for such breach is imposed on the violator."

There is no doubt that the availability of the defense depends upon state law. However, the applicable state law is not the law of negligence,

which defendant would have us apply. Because the action is one to enforce an absolute liability, the applicable state law is that which deals with those types of actions. It is elementary that contributory negligence, a concept of the law of negligence, is not an available defense against one seeking to enforce an absolute liability. In the *Boyer* case, the court said at 230 N.E.2d 173, 178:

"Under such a policy which imposes an absolute duty to provide for public safety it would be incongruous to allow the doctrine of assumption of risk to be employed by the defendant to avoid this responsibility to one for whose benefit the statute was enacted."

We believe this to be also true of the defense of contributory negligence and that it is unavailable in the case at bar.

■■ Implicit in the defendant's argument is the contention that the fact that plaintiff is a non-employee of the defendant railroad changes his status with respect to available defenses. Defendant has not suggested, however, that plaintiff is not within the class of those intended to be protected by the statute. We can see no cogent reason to apply the remedy the statute provides inconsistently with respect to employees versus non-employees. Plaintiff is within the protected class and therefore he should be afforded all the incidents of the remedy, including the unavailability of contributory negligence as a defense. It was not error to deny the motions for directed verdict on the Safety Appliance Act count.

■■ Defendant contends that the trial court erred in denying its motion for directed verdict on the common law negligence count because there was no evidence of a breach of a common law duty to plaintiff. There is no question that defendant owed plaintiff a duty of due care. The issue is whether the conduct of the defendant's employees, measured in light of the knowledge they possessed at the time the two cars were spotted in the Flintkote yard, met the standard of conduct which the duty of due care imposed. Defendant argues that the actions of the plaintiff and others in the Flintkote unloading crew on the day of the accident are so remote as to be unforeseeable by defendant's spotting crew on the day before, and the duty of due care does not extend so far as to require them to anticipate and take steps to avoid injuries such as occurred here.

In order to determine whether the evidence was sufficient to raise a fact question on this issue, we must examine the record to determine the circumstances surrounding the spotting of the two cars. The record indicates that the defendant's crew knew that the cars they were spotting would be moved by Flintkote employees. They also knew that there was

a slight incline in the yard and that the wheels on the cars that were being spotted would have to be blocked and the hand brakes set to keep them from rolling. There is evidence that the hand brakes were set on both cars when they were spotted. But there is no testimony indicating that anyone blocked the wheels of the cars—only that it was customary to do so. The crew admitted that it was customary to block the wheels of the cars they spotted with either wooden blocks found along the right of way, or with metal chocks built especially for the purpose, and which were kept next to the tracks in Flintkote's freight yard. There was testimony that the use of metal chocks would make it impossible to move the car, even with a "car mover."

■■■ We believe that the crew's knowledge of the incline of the yard, the expected moving of the cars by Flintkote employees, and the availability of devices to positively secure the cars, imposed upon defendant's crew a duty to take some steps to ensure that the cars they spotted would not move unexpectedly to injure those working about them. Evidence that the usage of physical blocking devices was customary indicates that mere locking of the hand brakes was not sufficient. Thus, the testimony at trial established that the railroad was under a duty to block the cars for the benefit of Flintkote employees, and the complete absence of testimony by the defendant's crew that wooden blocks or metal chocks were placed under the wheels of the north and south cars when spotted raises an inference that the duty was breached. Consequently, the evidence raised a fact question for the jury as to common law negligence and it was not error to deny the motion for directed verdict as to that count.

Since the evidence at trial was sufficient to present a fact question as to both the common law negligence count and the Safety Appliance Act count, the equipment was in use on the railroad's line at the time of the injury, and contributory negligence is not a defense to the action, we hold that the trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict.

■■ Defendant further argues that the trial court erred in denying its motion for a new trial. It is contended that the verdict is against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence when an opposite conclusion is "clearly apparent," (*Tabor v. Tazewell Service Co.*, 1958, 18 Ill.App.2d 593, 153 N.E.2d 98), or when the finding of the jury appears to be "unreasonable, arbitrary and not based upon the evidence." (*Stobbs v. Cumby*, 1956, 9 Ill.App.2d 138, 132 N.E.2d 448.) In this case the plaintiff's burden of proof under the Safety Appliance Act count consisted only of showing that the equip-

ment failed to function efficiently on the instance in question and that he was injured as a proximate result. Here there was uncontradicted testimony tending to show that plaintiff was attempting to uncouple the two cars, that he performed all the prescribed operations to accomplish that end, that the cars did not uncouple as expected, and that he was injured by the second car. Considering this evidence alone, we cannot say that the jury's finding of liability was unreasonable or arbitrary, nor could we say that a contrary result was clearly apparent. The verdict is not against the manifest weight of the evidence tending to establish liability under the statutory count and, since one good cause of action is sufficient to sustain a general verdict where several causes of action have been alleged (*City of Litchfield v. Thorworth, supra*), we need not consider the remaining evidence.

Defendant also argues that the trial court erred in admitting speculative and misleading opinion evidence. The evidence was presented during plaintiff's case-in-chief and consisted of expert testimony by a railroad switchman of long experience on the operation of the type of coupler which caused the injury. In effect, the witness testified that if plaintiff raised the coupler pin by operating the pin release handle at the side of the car, and the pin fell back into the coupler prior to uncoupling, the parts were probably worn and the apparatus defective. Defendant objects to admission of this evidence and maintains that it was unsupported by facts in the record and was therefore speculative and misleading.

■■■ It is well established that an expert witness may testify to his opinion upon an assumed state of facts which the evidence in the record tends to prove, and which is propounded in hypothetical form. (*Goddard v. Enzler*, 1906, 222 Ill. 462, 78 N.E. 805.) Prior to the expert witness' testimony, it had been established that the coupler pin release handle had been operated and that the pin had been raised in the normal manner. Further testimony indicated that the pin had remained in an "up" position until just prior to the injury, but that afterward the pin was found securely down in the coupler. The question which elicited the testimony to which defendant objects theorized that the pin had fallen during the attempted uncoupling and we believe that this was an inference which could fairly be drawn from the previous testimony. The opinion was therefore supported by evidence and was correctly admitted.

The defendant's further contentions that the court erred in denying defendant's motion for directed verdict as to unproven grounds of recovery and in giving Safety Appliance Act instructions to the jury have no merit in view of our decisions on the issues above. The trial court did

not err in denying the motion for a new trial. Since we have found no error in the rulings on any of the motions at issue, the judgment is affirmed.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.