**Michael M. KRALL, Plaintiff,**

v.

**ROYAL INNS OF AMERICA, INC., and Patent Scaffolding Company, Division of Harsco Corporation, Defendants.**

**ROYAL INNS OF AMERICA, INC., Third Party Plaintiff,**

v.

**RED-E-STEEL COMPANY, INC., Third Party Defendant.**

**Civ. No. A-23-71.**

United States District Court,
D. Alaska.

Dec. 3, 1973.

Atkinson, Conway, Young, Bell & Gagnon, Anchorage, Alaska, for plaintiff.

Delaney, Wiles, Moore, Hayes & Reitman, Anchorage, Alaska, for third party defendant, Red-E-Steel Co., Inc.

Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, Alaska, for defendant Royal Inns.

Burton C. Biss, Anchorage, Alaska, for defendant Patent Scaffolding.

MEMORANDUM AND ORDER

PLUMMER, Senior District Judge.

This is an action to recover damages for personal injuries sustained by plaintiff Krall on July 27, 1970, during construction of the Anchorage Royal Inn. Plaintiff sustained injury when he lost his balance while awaiting a hoist on a cross-beam, which was ten stories above the ground and connected the external workmen's hoist to the building, and grabbed a vertical guide of the hoist, the rollers of the hoist coming into contact with his hand. The hoist was erected 14 feet from the building; there were no

walkways, guardrails, or toeboards (all required by the Alaska General Safety Code prior to the use of the hoist by workers) between the hoist and the building above the fifth floor. Plaintiff, an apprentice iron worker employed by Red-E-Steel Co., Inc., a subcontractor of Royal Inns, was working on the installation of the walkways connecting the hoist to the building. The hoist was leased by and in the control of Royal Inns. The court in a previous memorandum and order found Royal Inns' use of the hoist to constitute negligence *per se*, such negligence being a proximate cause of plaintiff's injury.

This case is presently before the court on motion for summary judgment by plaintiff on the issue of whether contributory negligence affords a defense to negligence *per se* based upon violation of regulations contained in the *Safety Code*. Decision was reserved after hearing on this motion as the court provided the parties forty-five days to file additional materials on the issue. No new materials were filed.

▮ The question in this diversity case is to be decided by state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Alaska Supreme Court has not yet spoken directly on the matter. A federal judge sitting in a diversity jurisdiction case has no roving commission to do justice or to develop the law according to his, or what he believes to be the sounder, views. *Cf.* Pomerantz v. Clark, 101 F. Supp. 341, 345, 346 (D.Mass.1951). The duty of a federal court exercising diversity jurisdiction when the state tribunals have not supplied an answer to the direct problem involved, is to apply the rule which it believes would be applied by the highest court of the state if the specific question should be presented to it. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940); Owens v. White, 380 F.2d 310 (9th Cir. 1967).

Plaintiff sets forth three reasons for denying the defense: (1) the legislature "clearly intended" to place the "entire responsibility" for injury on the employer; (2) the workman has a limited ability to exercise self-protective care because of economic duress; and (3) employers possess superior ability to bear and distribute the cost of the risk. Defendant asserts that contributory negligence is the general rule in Alaska [1] and argues against the intent and public policy contentions.

### 1(a)—*Clearly Intended*

To demonstrate the intent of the legislature, plaintiff stresses the Legislative Intent set forth in A.S. 18.60.010 in force at the time of the accident;[2] *Safety Code* § 300–20 which places a duty upon employers to provide safe working conditions and to use safety devices and safeguards; and *Safety Code* §§ 315–01 to 315–61 (concerning hoists and elevators) which delineate specific duties for employers but establish no duties for employees.

Defendant counters that A.S. 18.60.-010–18.60.105, comprising the article entitled Accident Prevention provided for penalties as follows:

"A person who violates [a provision of this article] is punishable for each offense by a fine . . . or by im-

---

1. Hale v. O'Neill, 492 P.2d 101 (Alaska 1971); Cummins v. King and Sons, 453 P.2d 465 (Alaska 1969); Harris v. Barrett and Lesh, Inc., 426 P.2d 331 (Alaska 1967); and Ogden v. State, 395 P.2d 371 (Alaska 1964).

2. (a) The legislature finds that preventable accidents are the leading causes of death in the state, that accidents cause nearly one-fourth of all deaths of the white race in the state and as much as 82 percent of all deaths in certain age groups; that the

proportion of accidental deaths to all deaths in three times as high in the state as in other parts of the United States where intensive accident prevention campaigns are conducted, and that an unknown but proportionately as great a rate of nonfatal accidents is sustained in the state.

(b) For these reasons it is found and declared necessary to undertake a program to reduce the incidents of preventable accidents in the state.

prisonment . . . or both." A.S. 18.60.090.

No mention is made of tort remedies, nor is mention made concerning the non-availability of contributory negligence. While such statute may be used to establish standards of care for a claim of negligence *per se*, ordinarily in such instances contributory negligence continues to afford a valid defense. Prosser, Law of Torts § 65 at 425 (4th Ed.1971); Jenkins v. Chicago & Eastern Ill. R.R., 5 Ill.App.3d 954, 284 N.E.2d 392, 400 (1972). It should be noted the Alaska legislature revised substantially A.S. 18.60.010–18.60.105 in 1973. A.S. 18.60.090, entitled "Penalty for Violations," as existed at the time of the accident was repealed and replaced by A.S. 18.60.095, entitled "Penalties." Whereas 18.60.090 set forth "fines" and "imprisonment" as penalties, 18.60.095 now specifies "civil penalties" for most violations, saving "fines" and "imprisonment" for serious violations only. Although the legislature dealt directly with penalties, again no mention is made of tort remedies or of the elimination of contributory negligence. From these indicia concerning A.S. 18.60.090 this court is not persuaded the legislature intended to abolish the defense of contributory negligence for a violation of the *Safety Code* or in any way intended to depart from the normal practice of allowing the defense. *Cf.* Prosser, Contributory Negligence as a Defense to Violation of Statute, 32 Minn. L.Rev. 105 (1948).

### 1(b)—*Entire Responsibility*

Plaintiff asserts, however, A.S. 18.60.010–18.60.105 as it existed at the time of the accident had the effect of placing the entire responsibility for harm as occurred upon the employer, and as such constituted one of an unusual type of statute which has been construed as intended to remove contributory negligence as a defense to negligence *per se*. Plaintiff relies principally upon this court's decision in Vance v. United States, 355 F.Supp. 756 (D.Alaska 1973); Restatement (2d) of Torts, § 483; and Koenig v. Patrick Construction Co., 298 N.Y. 313, 83 N.E.2d 133 (1948), annot. 10 A.L.R.2d 848 (1950). *See also* Prosser, *supra*, § 65 at 425, 426; and Mullendore, Limitations on Contributory Negligence as a Defense to Negligence Per Se, 2 UCLA-AK.L.Rev. 113 (1973). Defendant distinguishes *Vance* and argues § 483 is inapplicable. Defendant also contends *Koenig* represents a minority rule and urges against its adoption in Alaska. *See* Mason v. Case, 220 Cal.App.2d 170, 33 Cal.Rptr. 710 (1963); Mula v. Meyer, 132 Cal. App.2d 279, 282 P.2d 107 (1955); Wertz v. Lincoln Liberty Life Ins. Co., 152 Neb. 451, 41 N.W.2d 740 (1950); and *Jenkins, supra*.

In *Vance* the court denied the use of contributory negligence as a defense to defendant's violation of Alaska's Dram Shop Act, A.S. 04.15.020(a), which makes criminal the selling or giving liquor to minors or intoxicated persons. Plaintiff Vance alleged defendant's agent sold him liquor after he had become intoxicated and such act caused the harm. The court cited the following from the Restatement (2d) of Torts:

"1 . . . Thus a statute which prohibits the sale of firearms to minors may be clearly intended, among other purposes, to protect them against their own inexperience, lack of judgment, and tendency toward negligence, and to make the seller solely responsible for any harm to them resulting from the sale. In such a case the purpose of the statute would be defeated if the contributory negligence of the minor were permitted to bar his recovery." § 483, Comment c.

The court then found:

"A.S. 04.15.020(a) presents an even more compelling example of a statute intended to place the entire responsibility for resulting harm upon the violator, for it is virtually impossible for the statute to be violated without contributory negligence on the part of the plaintiff-consumer." *Vance, supra*, 355 F.Supp. at 759, 760.

The present situation is distinguishable from *Vance* first in that the impairment of judgment in *Vance* was caused by intoxication. Here any impairment of good judgment was caused by economic duress as found in *Koenig, supra.*[3] The court is not persuaded these different kinds of impairment should be afforded the same judicial treatment. Second, in the present situation negligence and contributory negligence can occur independent of one another. Thus, the necessity to construe the statute or regulation as placing the entire responsibility upon one party to effectuate the legislative purpose is much less compelling.

### 2—*Economic Duress*

Plaintiff's second reason for eliminating the defense is the worker's limited ability to exercise self-protective care because of economic duress. *See Koenig, supra.* The court concluded above this reason did not persuade the court to construe A.S. 18.60.010–18.60.105 to eliminate the defense. Nor does the argument standing on its own so persuade the court. It might be noted in passing New York alone removes the defense for violations of safety statutes concerning scaffolds, hoists, etc., in the absence of a statutorily-created civil remedy. Other jurisdictions disallowing the defense base their decisions on civil remedy provisions. *See, e. g.,* Bryntesen v. Carrol Construction Co., 27 Ill.2d 566, 190 N.E. 2d 315 (1963) (S.H.A. ch. 48 § 69); and Casper v. Lewin, 83 Kan. 799, 109 P. 657, 666 (1910) (statute provided civil damage remedy, but no criminal prosecution). Most states lacking such statutory direction which have faced the problem retain the defense. *See, e. g.,* Mason v. Case; Wertz v. Lincoln Liberty Life Ins. Co.; and Jenkins v. Chicago & Eastern Ill. R.R., all *supra.*

The economic duress argument could be extended to call for "general deterrence" of accidents. *See* Calabresi, The Costs of Accidents: A Legal and Economic Analysis, 68–94 (1970). *Cf.* McKean, Products Liability: Trends and Implications, 38 U.Chi.L.Rev. 3, 45–49 (1970). In theory requiring employers to bear the full losses of accidents caused by violations of the safety code should sensitize them to the mandates of the code. Obliging employers to internalize fully costs of violation-accidents would aid in the prevention and deterrence of those accidents. Further, theory suggests the employer is primarily a conduit through which accident costs are passed on to consumers. Thus, the removal of the defense would reduce accident costs in two ways: 1) by inducing employers to produce their product by the safest reasonable means, and 2) by increasing the cost and thereby reducing the consumption of high-accident products and services. Since the employer can pass on the costs, whereas the employee can not and the employee is further subject to economic pressure which inhibits his efforts to promote safety, the employer is clearly the better accident avoider. As such, the argument concludes, the employer should be charged with the costs of all accidents caused by violation of the *Safety Code.*

However, the general deterrence argument not only has theoretical problems, *see* Calabresi, *supra,* at 78–88, but it may have practical problems, also, as employers in the construction industry may be insensitive to accident costs regardless of the law's content. Sands, How Effective Is Safety Legislation, 11 J.Law & Econ. 165, 177, 178 (1968). Further, the theory proves too much as the rationale would charge all accident costs to employers. Also, the Unions' increased awareness and assertion of power in the name of safety lessens the economic pressure on workers. Finally, workmen's compensation and tort liability, even with the defense, provide much of the same internalization of accident costs. Thus, the court discerns no compelling reason to deny the defense.

3. The court makes no finding on the question of whether or not plaintiff exercised good judgment.

### 3—Employer's Superior Ability

Plaintiff's third reason for denying the defense is that employers possess a superior ability to bear and distribute the cost of the risk. Utilizing this method and reason for shifting the impact of accident costs onto the employer has been referred to as "enterprise liability." See Calabresi, supra, at 50–54. Alaska has examined enterprise liability theory in arriving at a judicial standard in respondeat superior cases. Fruit v. Schreiner, 502 P.2d 133, 141 (Alaska 1972); and Luth v. Rogers and Babler Const. Co., 507 P.2d 761, 763, 764 (Alaska 1973). In Fruit the court's modified enterprise theory of respondeat superior called for a jury determination of whether plaintiff was in the scope of his employment at the time of the accident. In Luth the Supreme Court reversed the trial court's directed verdict for plaintiff on the scope of employment issue requiring a determination by the finder of fact.

Although Fruit and Luth engendered the same policy reasons as advocated here for shifting accident losses,[4] the Alaska Supreme Court required jury findings on the issue of liability. It may be argued the present case is distinguishable from Fruit and Luth in that here the employer was negligent, whereas there the employers were not. Such argument confuses the issues of liability based on fault and liability based on enterprise theory. Further, the choice to retain the jury for affixing liability rather than barring the defense of contributory negligence does not reject the policy reasons advocated by plaintiff. The difference is one of degree with the jury accommodating those policy goals a substantial portion of the time.

Fruit and Luth weigh against denying the defense of contributory negligence in this case. The existence of workmen's compensation pre-empts part of plaintiff's policy argument by automatically allocating some of the losses to the employer. See A.S. 23.30. Finally, reliance upon the finder of fact does not reject the underlying policy.

■ The court concludes that the Alaska Supreme Court, if presented with the questions presently before this court, would hold as follows:

(1) The Alaska Legislature did not intend to deny the defense of contributory negligence to negligence per se based on violations of the Alaska General Safety Code;

(2) The effect of the Safety Code and the enabling legislation is not to place the entire responsibility for the harm on the defendant employer; and

(3) Enterprise liability and general deterrence theory do not compel a finding that the entire responsibility for the harm shall fall on the employer.

In finding defendant Royal Inns negligent per se, this court applied Alaska's rule and attempted to sensitize employers to the requirements of the Safety Code. However, the defense of contributory negligence may act to remind employees that they too have a duty to promote safety. By retaining the defense, it remains to the finder of fact to sift through the facts and circumstances of each case and determine whether the employee met that duty. While it may

---

4. ". . . . it appears more socially desirable for the employer, although faultless itself, to bear the loss than the individual harmed. Insurance is readily available for the employer so that the risk may be distributed among many like insureds paying premiums and the extra cost of doing business may be reflected in the price of the product.[20]" Fruit, supra, 502 P.2d at 141. (Footnote 20 to: Calabresi, Some Thoughts on Risk Distribution and the law of Torts, 70 Yale L.J. 499 (1961)

It may be noted the Alaska Court alludes to the general deterrence mechanism in this passage. The reference to the "extra cost of doing business" is another phrase for "internalizing" the costs of accidents. The allusion is almost necessary because shifting losses from the employee to the employer is the mechanism by which both general deterrence and enterprise liability operate.

be argued that the worker's bearing the brunt of the harm caused by the accident negates any need for the judicial reminder, the court considers itself constrained not to intrude into the domain of the State Legislature on this issue. *See* Pomerantz v. Clark, *supra*. *Cf.* Peterson v. Culp, 255 Or. 269, 465 P.2d 876 (Or.1970); and Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445 (1968), annot. 32 A.L.R.3d 452 (1970).

Accordingly, it is ordered as follows:

1. Plaintiff's motion for summary judgment on the issue of denying the defense of contributory negligence to negligence *per se* based on violations of the Alaska General Safety Code is denied.

2. Contributory negligence may be asserted as an affirmative defense on the trial of this case.